WM. A. FOSTER & CO., INC. *v.* UNITED STATES

No. 6233.—Invoice dated Salford, England, January 30, 1936.
Certified January 30, 1936.
Entered at New York, N. Y., February 14, 1936.
Entry No. 800509.

Second Division, Appellate Term

(Decided November 20, 1945)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the appellant.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

TILSON, Judge: This is an application for review of the decision and judgment of the trial court granting the motion of appellee to

dismiss the appeal upon a finding that the importer had failed to make out a *prima facie* case. Although briefs were filed before this court by both parties, the application for review was submitted without oral argument.

The record in this case consists of an affidavit of the managing director of the manufacturer of the instant gage glasses, which was admitted in evidence and marked exhibit 1, and a special agent's report, which was admitted in evidence and marked exhibit 2.

In exhibit 1 affiant states that he is the managing director of Palatine Glass Co., the exporter of the instant merchandise; that said firm is a manufacturer and dealer in glass articles, gage glasses, machinery glass; manufacturing and selling gage glasses both for home consumption and for export to foreign countries, including the United States; and that

* * * the prices and discounts appearing on said invoice to L. Solomon & Son, Inc., of New York City, consist of gauge glasses of the size and quantity specified above and represent the true market value of said gauge glasses in Great Britain at the time of shipment and that the Palatine Glass Co. Ltd., were prepared and willing to sell in the same quantities such gauge glasses at the prices and discounts to L. Solomon & Son Inc., as hereinabove set forth.

Affiant further states that the prices appearing on the invoices to L. Solomon & Son, are in fact the actual prices paid for such gage glasses; that he attaches to his affidavit a price list which forms the basis of sales made both in the home market and for export to the United States; that their selling prices and discounts to all purchasers both for home consumption and for export to other countries are the same in similar quantities as supplied to L. Solomon & Son; and that they "are at present supplying similar goods at similar prices to a purchaser for home consumption."

In exhibit 2 the special agent reports that he called at the office of Palatine Glass Co., Ltd., the exporter herein, and interviewed Mr. Philip Child, who is the same person who signed the affidavit, exhibit 1. The special agent further states that the information contained in his report was obtained from a personal inspection of the regular books of account and other records of Palatine Glass Co., and that Mr. Child placed those records at his disposal and supplied supplemental information.

The following is quoted from the special agent's report:

The manufacturers did not have any figures available to show the exact cost of fusing the ends of the gauge glasses, but they had quoted the importer, L. Solomon & Son, Inc., of New York, a price of 3d per dozen, or 3/- per gross for fusing the ends of the gauge glasses.

*I found where the manufacturers had sold gauge glasses in the home market in 4 foot lengths with cut ends. The glasses were priced at the list price, and the only indication of a concession in price for cut ends instead of fused ends was a higher discount allowed. In some cases 65% was allowed, and to another customer 70%*

*was allowed from the list price. In no instance could I find where there had been a definite deduction of 3d per dozen as an allowance for cut ends over fused ends. As stated above, the only indication was a higher discount allowed.* [Italics ours.]

Following this is a tabulation of the results of an analysis of *all* home market sales of gage glasses, made during the months of January, February, and March 1935. In this tabulation is listed 151 invoices as showing a discount of 50 per centum, 27 invoices as showing a discount of 60 per centum, 38 invoices as showing a discount of 65 per centum, and 3 invoices as showing a discount of 70 per centum. These discounts are from the base prices shown on the price list, one of which price lists is attached to exhibit 1.

The merchandise was invoiced, entered per dozen feet, and appraised per dozen pieces as follows:

PLAIN GAUGE GLASSES

|  | Invoice | Entered | Appraised |
|---|---|---|---|
| 25 Doz. Size 12 x ½ Doz. Ft. 25 | 1/- | same | 0/4/6 |
| 36 Doz. Size 12 x ⅝ Doz Ft. 36 | ¼ | same | 0/6/0 |
| 25 Doz. Size 12 x ¾ Doz. Ft. 25 | ⅛ | same | 0/7/6 |
| Less discount | 12½% | Less Carr. Fob & Consul Fee | Less 3D for fuseing ends Less 50% discount FOB. Packed |

The items of Carr. Fob and Consul Fee, amounting to £0–1–5 and £0–10–5, respectively, are nondutiable items and are so returned by the appraiser on the invoice. As will be seen from the above, all these gage glasses are 12 inches in length and the fact that they were invoiced and entered "per dozen feet" and appraised "per dozen pieces" is not here material.

If, as stated by the special agent, heretofore quoted, the only indication of a concession in price for cut ends instead of fused ends was a higher discount allowed, then it would appear that consideration should be given to the question of whether or not the appraiser erred in allowing the 3d per dozen for cut ends instead of fused ends. And if it should be found that the appraiser was in error in this respect, then the question arises as to what is the proper value of the instant gage glasses having cut ends. The special agent reports that he found sales of gage glasses with cut ends at list prices less discounts of 65 per centum and 70 per centum.

It is true that the special agent gives a tabulation of sales in which it is shown that the major portion of the sales are made at list prices less a discount of 50 per centum, but it is also to be noted that this is "An analysis of all home market sales of gauge glasses," among which, of course, are included gage glasses with cut ends. The only evidence given by the special agent of sales of gage glasses with cut ends is at the list prices less discounts of 65 per centum and 70 per

centum. However, in view of the conclusion we have reached, these are questions for consideration by the trial court.

With reference to the weight to be given to the statements contained in the affidavit, exhibit 1, the trial court observed:

> The unsupported statement of the affiant that the invoice prices represent the "true market value of said gauge glasses in Great Britain" is a conclusion to which no evidentiary value attaches.
>
> The further statement of the affiant that the manufacturers "were prepared and willing to sell" falls far short of establishing the freely offered prices for this merchandise either for home consumption or for exportation to countries other than the United States. * * *

What constitutes the "true market value of said gauge glasses in Great Britain" is a question of law to be decided by this court based upon the facts established by this record. With reference to the statement in the affidavit as to the price at which the manufacturers "were prepared and willing to sell," we think this was very clearly and definitely answered by Kincheloe, Judge, in *Golding Bros.* v. *United States*, Reap. Dec. 4929 (quoted with approval by the Appellate Division on review, Reap. Dec. 5196), in the following language:

> The mere statement of plaintiff's witness that the exporter of the instant merchandise was prepared and willing to sell identical merchandise to others for exportation to the United States is not sufficient, in my judgment, to warrant a definite finding of the existence of an export value within the statutory definition of such value as set forth in section 402 (d) of the Tariff Act of 1930.
>
> * * * * * * *
>
> * * * In my opinion, the broadest interpretation that can be accorded the above-quoted testimony of plaintiff's witness is that sales for export of identical cotton mattress tickings to others than the plaintiff herein would have been made if requests for such merchandise had been received from other prospective purchasers in the United States. In other words, said witness presents evidence of a hypothetical market, or what the exporting firm would have done if confronted by conditions not shown to have existed. Certainly, such evidence can have no probative value in determining proper dutiable value of imported merchandise.

With reference to the special agent's report in evidence herein, the trial court made the the following observation:

> A Treasury representative's report (exhibit 2), introduced by the defendant after its motion to dismiss was taken under advisement, being the only other evidence contained in this record, is of no assistance to the plaintiff in proving a *prima facie* case.

The idea intended to be conveyed by the statement that "A Treasury representative's report * * * introduced by the defendant * * * is of no assistance to the plaintiff in proving a *prima facie* case" is not at all clear. If it were the intent to hold that facts or evidence contained in a special agent's report are not available to be considered and weighed in favor of the plaintiff's contention, if favorable thereto, because such facts or evidence were offered by the defendant in the form of a special agent's report, such a holding is clearly in error.

Section 501 of the Tariff Act of 1930 provides in part that:

* * * Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States .Customs Court and shall be assigned to one of the judges, who shall, after affording the parties an opportunity to be heard, determine the value of the merchandise. * * *

Under the above-quoted.provision, as well as under all the rules for the admission of evidence in a reappraisement case before this court, all evidence must be considered and weighed in determining a value for the merchandise, whether it be offered by the plaintiff or by the defendant in the form of a special agent's report. In. other words, evidence offered by the defendant in the form of a special agent's report after a motion to dismiss had been taken under advisement is of equal assistance to the plaintiff in establishing a *prima facie* case as if it had been offered by the plaintiff, if in fact such evidence does assist the plaintiff in supporting its contention.

Until it has been made clear that the trial court has considered and weighed all the evidence, whether offered by the plaintiff or by the defendant, in an effort to determine the proper dutiable value of the instant gage glasses, it is not proper for the Appellate Division to review the decision of the trial court in this case. Therefore, for the purpose of affording the trial court an opportunity of clarifying the above-quoted statement in its decision, and for such other action as it may deem proper in the premises, the decision and judgment of the trial court are reversed, and the case is remanded to the trial court for action not inconsistent with the views herein expressed. Judgment will be rendered accordingly.