## FRED SELIG v. UNITED STATES

No. 7633.—Invoices dated Havana, Cuba, November 1944, etc.
Certified November 1944, etc.
Entered at Portland, Oreg., December 12, 1944, etc.
Entry No. 224, etc.

(Decided December 7, 1948)

*Lawrence, Tuttle & Harper* (*Walter I. Carpeneti and Charles J. Evans* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

CLINE, Judge: The appeals listed in schedule A, hereto attached and made a part hereof, are for the reappraisement of cigars exported

from Cuba on various dates between November 25, 1944, and January 27, 1945. They were entered and appraised as follows:

| Description | Entered per M, less discount | Appraised per M, net packed |
|---|---|---|
| Perlitas 1/20 | $56 | $68 |
| Cremitas 1/20 | 56 | 80 |
| Especiales 1/20 | 66 | 90 |
| Coronas 1/20 | 82 | 95 |
| Coronas 1/40 | 85 | 100 |
| ½ Coronas 1/20 | 82 or 85 | 95 |
| ½ Coronas 1/40 | 85 | 100 |
| Conchas 1/20 | 66 | 85 |
| Conchas 1/40 | 66 | 90 |
| Petit Cetros 1/20 | 85 | 96 |
| Petit Cetros 1/40 | 85 | 101 |

At the trial plaintiff introduced into evidence an affidavit of Erenio Gonzalez, owner of the cigar factory "Caney," Santa Clara, Cuba, subscribed and sworn to before the American vice consul at Cienfuegos on April 16, 1945. It is stated therein that none of the cigar shapes exported to Fred Selig is manufactured for home consumption in the same quality, presentation, and measurements; that if the same shapes should happen to be manufactured for home consumption, the price would be cheaper since the raw material used for home consumption is inferior to that used for cigars exported to the United States; and—

30.—That the prices at which Mr. Fred Selig, Portland, bought the cigars from my factory, correspond to the market prices of cigars exported from Cuba to the United States by factories of similar category, at the corresponding period of time, for the same or similar shapes in similar quality and presentation.

Defendant introduced into evidence a report of Charles R. Clark, Treasury Representative in Charge, dated March 26, 1945. According to this report such or similar cigars to those sold to Fred Selig are not sold or offered for sale in Cuba. The report states that there was no agreement to sell "Caney" cigars only to Fred Selig, but that he was the only recent customer except for sample shipments; that offers were made and/or samples sent to three persons or firms during February 1945 at the following export prices:

| | |
|---|---|
| Coronas | $120 per M |
| Cremas Finas | 100 " " |
| Petit Cetros | 96 " " |
| Media Corona | 95 " " |
| Especiales | 90 " " |
| Rangers | 75 " " |
| Londres | 85 " " |
| Conchas | 85 " " |
| Perlitas | 68 " " |
| Panetelitas de Hebra | 45 " " |

The report sets out also the prices of a sample shipment to Industrial Supply Co. on January 18, 1945, as follows:

| | |
|---|---|
| Coronas | $100 per M |
| ½ Coronas | 95 " " |
| Petit Cetros | 96 " " |
| Cremitas | 85 " " |
| Conchas | 80 " " |
| Perlitas | 70 " " |

The report then states that in a letter to Fred Selig, dated November 1, 1944, Edmundo A. Haas (selling agent) set forth the prices of "Caney" cigars as follows:

| | |
|---|---|
| Especiales Caney | $66 less 5% per M |
| Cremitas | 56 less 5% " " |
| Perlitas | 56 less 5% " " |
| Conchas | 65 " " |
| Petit Cetros | 85 " " |
| Medias Coronas | 85 " " |

It is also stated that the discounts allowed on the first shipment were reduced from 5 per centum to 3 per centum to offset the selling agent's increased commission and that there were other slight price changes.

The parties are in agreement that there was no foreign value for this merchandise and the only issue is whether the entered values or the appraised values represent the correct dutiable export value.

The appraised value is presumed to be correct and the burden rests upon the importer to overcome the presumption and to prove the correct dutiable value. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332. In the instant case the only evidence presented by plaintiff is the affidavit of Erenio Gonzalez. Plaintiff contends that the third paragraph of that affidavit, quoted above, is evidence that the prices at which cigars were sold to Fred Selig represented the usual market prices for export to the United States of cigars of similar shapes, quality, and presentation during the period from November 25, 1944, to January 27, 1945. This statement, however, is a conclusion of the witness, unsupported by invoices, price lists, or other evidence of sales or offers to sell. Such a statement, uncorroborated by any other evidence, does not constitute adequate proof of the elements necessary to establish dutiable export value. *Sanders Mfg. Co.* v. *United States*, 5 Cust. Ct. 585, Reap. Dec. 5044; *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. 19, C. A. D. 118.

While evidence offered by the defendant in the form of a special agent's report may aid plaintiff in establishing a *prima facie* case (*Wm. A. Foster & Co., Inc.* v. *United States*, 15 Cust. Ct. 459, Reap. Dec. 6233), the information in the treasury representative's report herein does not overcome the presumption of correctness attaching to the appraiser's valuation. The report states that Fred Selig was the

only recent customer, but lists sales or offers to sell to several others, at least one of which took place within the period when the merchandise herein was being exported. These sales or offers to sell were at different prices than those at which Selig purchased. There is nothing in the report to indicate that the prices to Selig were the prices at which such or similar merchandise was freely offered for sale to all purchasers, in the principal markets of Cuba, in the usual wholesale quantities, and in the ordinary course of trade.

There is nothing in the record herein to overcome the presumption of correctness attaching to the appraiser's valuation of the merchandise. I find, therefore, that the export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise here involved and that such values are the appraised values.

Judgment will be rendered accordingly.