BEFORE THE FIRST DIVISION, MAY 31, 1951

**No. 55614.**—Fred Selig *v.* United States, petitions 6716–R and 6753–R (Portland Oreg.).

OLIVER, Chief Judge: These petitions are for remission of additional duties assessed under the provisions of section 489, Tariff Act of 1930, by reason of the final appraised values exceeding the entered values of certain shipments of cigars imported from Cuba and entered at the port of Portland, Oreg.

The merchandise was entered at values which the petitioner believed to be the correct ones for valuation purposes and was appraised at higher values. It appears that the petitioner during the particular periods of exportation was the only purchaser of these cigars.

The customs broker for the petitioner testified that in the case of all of the shipments here in question he filed with the appraiser the pertinent consular invoice and a submission sheet (petitioner's exhibit 1) requesting information from that officer relative to the valuation of the merchandise. It appears that at the time of submission, the appraiser had no information as to the value of the merchandise but requested that the broker or the importer ascertain from the sellers or the manufacturers the correct foreign or export values of the cigars in question. The witness stated that over a considerable period of time he had discussions with the appraiser respecting the proper valuation of this merchandise. He further testified that several months prior to the appraisements of the entries in question, the appraiser notified him that he had information in his possession which indicated higher values for these cigars than those stated in the invoice (R. 18). He stated, however, that other than the notification received from the appraiser, he had no information which would cause him to doubt that the invoice price in each entry represented the market price of the goods at the time of exportation and that he withheld no facts from the Government; that after such notification from the appraiser, he then advised the petitioner to secure information relative to the correct values as a result of which the importer obtained affidavits from the manufacturers which tended to support the importer's claim as to the valuation of the merchandise (petitioner's exhibits 3 and 4). The witness stated, however, that he, himself, did not consider the information contained in the affidavits sufficient to support the entered values (R. 42). These affidavits were submitted by the broker to the appraiser several months prior to the appraisement of the merchandise in connection with the discussions had with that officer relative to the correct values for the goods.

The importer of the merchandise here in question was an alien unfamiliar with customs procedure and practice. The customs broker, above referred to, testified, however, that from the time he handled the initial importations of these cigars up to the dates of the final appraisements, he had advised the importer as to the various provisions of law covering the entry of merchandise, particularly as to his obligation to enter the goods at the correct values and to furnish the Government any information in his possession showing different values than those at which entered; that he likewise had informed the petitioner as to the penalties that would arise out of the undervaluation of the merchandise. The record discloses that, relying on the information contained in the affidavits received from the manufacturers and his own knowledge of market conditions, the importer took the position that the values stated by him were correct and made no amendment of any of the entries herein, but entered the goods at the invoice prices. All of the merchandise was appraised at values higher than those at which entered. Subsequently, the petitioner filed appeals for reappraisement, but the appraised values were sustained in the case of all of the involved entries but one, wherein the appeal was abandoned on the ground that plaintiff had failed to overcome the presumption of correctness attaching to the action of the appraiser. (*Fred Selig* v. *United States*, 21 Cust. Ct. 342; *same*, 345, Reap. Decs. 7633 and 7634.)

The petitioner herein testified that at the time the involved entries were made, he had no information in his possession regarding the value of these cigars which he did not disclose to the appraiser, and that he never received any information which caused him to doubt that the invoice prices represented the correct values. He stated that after he was notified by his broker to secure information relative to the value of the merchandise, he contacted the manufacturers and obtained from them in April 1945 the affidavits heretofore referred to relative to the prices at which these cigars were sold, and that he gave these affidavits to the appraiser. An affidavit of one of the manufacturers in question, Elias Agustin Quintero Garcia, indicated that the cigars sold by him to the importer were not manu-

factured for home consumption and that the prices at which they were sold to the petitioner represented the market prices of similar cigars exported from the country of exportation to the United States (petitioner's exhibit 3). A further affidavit of another manufacturer, Erenio González, owner of the "Caney" factory was to the same effect (petitioner's exhibit 4). The witness further testified that he had conferences to discuss the proper valuation of the imported cigars with the supervising appraiser of customs and the Commissioner of Customs in Washington, at which time there were present, besides himself, the president of the cigar manufacturers' organization, who was one of the exporters herein, and the commercial attaché from the Cuban embassy; that previous to such discussions with the customs officials, he had been in frequent communication with the manufacturers to obtain information regarding the proper dutiable value of the merchandise. He further stated that cigars of similar quality were exported by one of the manufacturers herein to Miami and no question was raised at that port as to the invoiced prices being the correct values for the merchandise; that he brought to the appraiser many samples of cigars from the involved shipments, showed him the filler and binder, and that the appraiser agreed that the cigars imported by him were of inferior quality than higher-priced cigars; that he pointed out to the appraiser that he previously had imported similar cigars at the same or lower-declared values than the ones in question. He further stated that after he was advised that the entered values of these cigars were being questioned, he tendered to the appraiser unsworn statements from the manufacturers that the invoiced prices were those at which they would sell similar cigars to anyone (R. 85); that at that time further discussion was had with the appraiser as to the quality of the imported cigars, and the appraiser informed him that he, himself, would seek more information relative to the valuation of these cigars from the Customs Agency Service of New York (R. 87).

The appraiser of the cigars covered by the involved entries testified that he had numerous discussions with the customs broker relative to the value of the imported merchandise over a period of 2 years subsequent to entry and prior to appraisement; that he requested from him information as to the value of these cigars but that no information was furnished; that the broker explained that his failure of not furnishing information was because the importer knew all about the value of Cuban cigars and claimed the invoice prices were correct. He further testified that he had several discussions with the importer during all of which the petitioner contended the invoice prices were correct. The witness disputed the fact that the affidavits of the manufacturers containing information as to the value of these cigars, previously referred to (petitioner's exhibits 3 and 4), were given to him by the importer or the broker but did state that he received three affidavits from the Treasury Department which had been transmitted to it by the Department of State. Although the record is not clear as to the exact disposition of the affidavits of the manufacturers, it appears that the material contained therein, whether copy or original, was furnished to the customs officials at Washington who, in turn, transmitted the information to the appraiser by forwarding the latter three affidavits mentioned. As previously indicated, these affidavits tended to support the entered values.

The respondent in its brief directs our attention to *United States* v. *H. S. Dorf & Co. of Pa., Inc.*, 36 C. C. P. A. (Customs) 29, C. A. D. 392, wherein our appellate court said, page 32.

Moreover, where a submission sheet has been returned with no information, that fact is sufficient to put a customhouse broker on notice so as to require that he seek further information as to value before making entry. *United States* v. *Aug. F. Stauff & Co.*, 25 C. C. P. A. (Customs) 215, T. D. 49306.

The situation in the *Dorf* case, *supra*, is not on all fours with the facts in this case. There, the broker made no inquiry as to the value of the merchandise but merely entered at the invoice prices. The record in the present case shows the broker discussed the question of value with the importer in the case of all the shipments herein and instructed him to supply any information bearing upon the valuation of these cigars. Furthermore, after notification that the entered values were being questioned, the broker communicated this fact to the importer who, in turn, made inquiries of the sellers of the merchandise in an endeavor to establish the correct values.

The principal question here is the good faith and intention of the petitioner in entering his merchandise. In *Wolf & Co.* v. *United States*, 13 Ct. Cust. Appls. 589, T. D. 41453, the court stated that to be entitled to relief the petitioner must show the following:

* * * First, He [petitioner] must show that in undervaluing his goods he was acting in entire good faith; second, that there were no facts or circumstances known to the petitioner when he made his entry which would cause a prudent and reasonable person to question the correctness of the values given by him; third, that he has made to the collector in making his entry, full and candid disclosure of all the material facts in his possession bearing upon the value of the merchandise imported.

In the present case the importer, in the mistaken belief that he was correct, entered these cigars at the invoice prices. The record indicates that all facts in his possession were disclosed to customs officials and that the petitioner furnished what information he could to substantiate his claimed values. The petitioner communicated with the manufacturers of the cigars and turned over to the customs officials certain affidavits which tended to support the position of the petitioner that his entered values were correct. Further, his continued discussions with the appraiser, the Commissioner of Customs, and the supervisor of appraisers indicate that the petitioner cooperated with the customs officials to determine the correct values for this merchandise. While the importer may have been obdurate in his position that the invoice prices were the proper ones for valuation purposes, it appears that he was honest in his belief that such values were correct. Upon a consideration of the entire record, we are satisfied that the petitioner's course of conduct justifies a finding in his favor and that entry of the merchandise at a less value than that found on final appraisement was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts, or to deceive the appraiser as to the value of the merchandise.

The petitions are therefore granted, and judgment will issue accordingly.

### CONCURRING OPINION

COLE, Judge: This case was heard and submitted before the chief judge while on circuit, under statutory authorization to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.