GERHARD & HEY CO., INC. (PHILIPP WIRTH) v. UNITED STATES

**No. 8063.**—Entered at New York, N. Y.
Entry No. 896245, etc.

(Decided November 23, 1951)

*Lamb & Lerch* (*Thomas J. McKenna, John G. Lerch,* and *David A. Golden* of counsel) for the plaintiff.

*Charles J. Wagner,* Acting Assistant Attorney General (*John F. Kavanagh, Daniel I. Auster,* and *Samuel D. Spector,* special attorneys), for the defendant.

LAWRENCE, Judge: The 11 appeals for reappraisement enumerated in schedule "A," attached to and made a part of this decision, were consolidated for hearing and decision.

Said appeals pertain to certain filters, parts thereof, and filtering materials exported from Germany. The merchandise was invoiced at certain *per se* prices less a stated discount. Entry was made under duress, and the merchandise was appraised on the basis of foreign value, as defined in section 402 (b) of the Tariff Act of 1922 and section 402 (c) of the Tariff Act of 1930, at the same *per se* prices but less a smaller discount than invoiced.

The parties hereto agree that the merchandise presently before the court is similar to that involved in appeals for reappraisement 55526–A, etc., which, after extended litigation, were finally decided by the Court of Customs and Patent Appeals in *United States* v. *Philipp Wirth et al.* and *Philipp Wirth et al.* v. *United States*, 24 C. C..P. A. (Customs) 188, T. D. 48654, and will be referred to *infra* as the test case. It is further agreed that the exporter and importer herein are the same as those in the cases referred to above.

In passing, it might be noted that the lapse of time in the disposition of the present case is due largely to several delays incident to appeals to the appellate division and to the appellate court in the test case, and to difficulty in securing evidence from Europe because of unsettled world conditions.

The test case terminated in a dismissal of the appeals for failure of proof of statutory cost of production (section 402 (e) of the Tariff Act of 1922 and section 402 (f) of the Tariff Act of 1930). The court, however, was satisfied that there was no foreign value, export value, or United States value applicable to the merchandise.

It has been agreed by counsel for the parties to the present case that the proper basis for appraisement of the instant merchandise is cost of production.

The presumption of correctness of the appraiser's valuation based on foreign value having been overcome, plaintiff is required to go further and prove the correct dutiable value in order to prevail. *Harry Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332; and *Sears, Roebuck & Co. et al.* v. *United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246.

To that end, the plaintiff offered, and there were received in evidence, the following exhibits:

Collective exhibit 1, an affidavit dated October 20, 1933, of Carl Weichel, legal adviser and general supervisor of the firm of Seitz-Werke G. m. b. H., Bad Kreuznach, Germany, supplier of the merchandise here involved. Attached to said exhibit is an exhibit A containing certain cost-of-production statistics. (These documents were in evidence in the test case, *supra*, as exhibit 13.)

Collective exhibit 2, an affidavit of said Carl Weichel, dated February 10, 1933, together with an attached exhibit A. (These documents were in evidence in the test case, *supra*, as exhibit 12.)

Exhibit 3, an affidavit of said Carl Weichel, dated May 18, 1949.

Exhibit 4, an affidavit, dated May 18, 1949, of Theodor Baeder, head of the bookkeeping department of the Seitz-Werke.

Defendant submitted certain documents which were received in evidence and marked as follows:

Collective exhibit A, a Treasury attaché's report, dated September 20, 1933, together with supporting documents. (These papers were in evidence in the test case, *supra*, as exhibit 14.)

Exhibit B, a Treasury attaché's report, dated May 15, 1933. (This document was in evidence in the test case, *supra*, as exhibit 18.)

Exhibit C, a Treasury attaché's report, dated July 7, 1937.

Exhibit E, a photostatic copy of a letter, duly authenticated, from the Consular Branch, Office of the Political Adviser for Germany, Frankfort, to the Department of State, Washington, D. C., dated June 23, 1949.

Exhibit F, a copy of a telegram, duly authenticated, from James W. Riddleberger, Counselor of Mission, Frankfurt, to the Secretary of State, dated June 22, 1949.

Defendant's exhibits D-1, D-2, and D-3, originally marked for identification, were subsequently withdrawn with the approval of the court, and two of said exhibits for identification are now in evidence as exhibits E and F, *supra*.

The statutes involved are the cost of production provisions of the Tariff Act of 1922 and of the Tariff Act of 1930, section 402 (e) and section 402 (f), respectively, and, being identical in content, only the latter is here set forth:

SEC. 402. VALUE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(f) Cost of Production.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In the brief of plaintiff herein, it is stated:

It is the contention of the plaintiff herein that Exhibit 1 (R. 11) and Exhibit 2 (R. 12) when taken together with Exhibit 3 (R. 12) and Exhibit 4 (R. 13), are more than sufficient evidence to prove the cost of production figures contained in the affidavits of Carl Weichel.

The brief further recites, however, that—

In the plaintiff's Exhibits 1 and 2 (affidavits of Carl Weichel), there is attached on each an Exhibit "A" which gives the various elements of cost of production. In Column 5 of these Exhibits "A" (of Exhibits 1 and 2) is shown the "percentage of net profit based on Column 2." Column 2 is the "Cost of Materials, Fabrication, Labor, Manipulation, or other process." Therefore, the "percentage of net profit based on Column 2" which is found in Column 5 is *not* the profit to be added since it is not in conformity with Section 402 (e). Section 402 (e) (4) states:

> An addition for profit (not less than 8 per centum of the *sum* of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration * * *.

Paragraphs (1) and (2) of Section 402 (e) which must be added to determine the profit to be added are the "cost of materials of, and of fabrication, manipulation, or other process" *and* the "usual general expenses." In arriving at the profit used in Column 5 of the Exhibits "A" attached to plaintiff's Exhibits 1 and 2, the "usual general expenses" were not considered.

It is the view of plaintiff that this deficiency in proof is supplied from exhibits A and B introduced into evidence by the defendant herein.

The exhibits 1, 2, A, and B, referred to above, were before the appellate court as exhibits 13, 12, 14, and 18, respectively, in its determination of the test case, 24 C. C. P. A. (Customs) 188, T. D. 48654. In considering the evidentiary value of said exhibits, the court stated—

However, assuming that the books of account of the manufacturer of the involved merchandise would, on the record before us, be admissible in evidence, we nevertheless are of the opinion that the appellate division did not commit reversible error in holding that Exhibit 12 is insufficient upon which to base a finding of cost of production of the merchandise involved, even when considered with Exhibits 13, 14, and 18.

It affirmatively appears from the record that there were no books of account or other records of the manufacturer separately showing its general expenses and profit.

It will be observed that the appellate division in its decision stated that Exhibit 18 shows that "Exhibit 12 is based upon information furnished to the affiant either by *other persons* or taken from records not made or kept by him." [Italics ours.] Said Exhibit 18 is a report made by a Treasury representative. It appears therefrom that a Mr. Seitz, president of the company which manufactured the involved merchandise, was asked what assistance the affiant Weichel had in preparing the exhibit attached to and made a part of Exhibit 12. He answered as follows:

> * * * The preparation proper was in the hands of Mr. Carl Weichel. He was assisted by data furnished by manager Reininger, in charge of the bookkeeping section, by Mr. Juenger, chief of the calculation department, and in regard to the packing charges, by the forwarding department.

Question 1 (c): Were the working sheets from which the tabulation was prepared, retained?

Answer: Except for the packing charges which were taken from original invoices, working sheets were retained by Mr. Weichel.

It thus appears that Weichel did not obtain his information solely from the regular books of account of the manufacturer, but from other persons as well, as stated by the appellate division. Therefore, even if the theory of appellants be assumed to be correct, that Weichel was competent to testify as to the contents of such books of the manufacturer, *it affirmatively appears that the statements made in said Exhibit 12 were not secured solely from such books, but in part from other persons.* [Italics supplied.]

\*         \*         \*         \*         \*         \*         \*

It appears from the record herein that the appellate division did weigh Exhibit 12 and found that it, when considered with the other evidence in the record was not entitled to weight with reference to the accuracy of the tabulations attached to said exhibit, nor was such accuracy established by other evidence in the case. \* \* \*

Plaintiff herein, through exhibits 3 and 4, seeks to remedy the deficiency of proof which proved fatal in the test case. Due to their importance to a proper determination of the present case, said exhibits are here set forth:

Exhibit 3:

CARL WEICHEL, being duly sworn, deposes ans [sic] says that he is attorney for the firm of Seitz-Werke of Bad Kreuznach, Germany, manufacturers of filters an[d] filter material; that he is the same Carl Weichel who executed the affidavit of February 10, 1933, and that he is thoroughly familiar with the contents of that affidavit; that at the time he executed the affidavit of February 10, 1933, he not only had personal supervision of the books of Seitz-Werke but that all of the entries in said books were made under his instructions and that he had personal knowledge of all of the entries made in the books of the said Company.

That as attorney for the Company, when he received a request for a sworn transcript of the records of the Company, he personally retained accountants to make the transcript under his supervision and instructions; that he can certify from his personal knowledge that the figures contained in the affidavit of February 10, 1933, are true and accurate und [sic] represent, to his personal knowledge, the actuel [sic] costs to the Company; that as attorney for the Company, over the period covered by the affidavit of February 10, 1933, it was his responsibility to know the accuracy of all entries made in the books of the Company and that it was his responsibility to see that they were accurately transcribed in the tabulation attached to the affidavit.

That he has read the observations of the United States Customs Court to the effect that there was no evidence "as to whether Mr. Weichel ever made or had any actual contact in the making of the cost records he used in preparing Exhibit 12 prior to the time he took therefrom the figures set forth in the exhibit attached to the affidavit."

Deponent further states that while he did not personally make the entries in the books, he had actual knowledge and personal contact and supervision of the making of the records and that he knows of his own knowledge that they are true and accurate.

Exhibit 4:

Theodor Baeder, as present head of the book-keeping department of the Seitz-Werke of Bad Kreuznach (Germany), being duly sworn, desposes [sic] and says,

that during the years of 1928–1935, he made all entries in the books of said firm *together with the deceased book-keeping director*, that he figured all cost records and that he made all respective entries in said books according the instructions and supervision of the attorney Carl Weichel. [Italics supplied.]

That he knows all of the facts given in the affidavit of the attorney Carl Weichel to be true of his own knowledge.

With regard to exhibit 3, *supra*, whereas there is no question of the *bona fides* of the affiant Weichel, there would appear to be a patent inaccuracy in said exhibit insofar as it states:

\* \* \* that at the time he executed the affidavit of February 10, 1933, he not only had personal supervision of the books of Seitz-Werke but that *all of the entries in said books* were made under his instructions and that he had personal knowledge of *all of the entries made in the books of the said Company*. [Emphasis added.]

The affidavit (collective exhibit 2) referred to office records of the company covering a period of years from 1926 through 1932. However, from the evidence in this case it appears that said affiant did not enter the employ of the Seitz-Werke until July 4, 1929, which would seem to weaken the affidavit as proof, even though it is recognized that the present importations were made subsequent to the date of Mr. Weichel's employment.

It must now be determined whether the additional affidavit of Mr. Weichel (exhibit 3) and the affidavit of Mr. Baeder (exhibit 4) have overcome the deficiency found by the appellate court to exist in the test case when exhibits 1, 2, A, and B were previously before that court.

Whereas the affidavit of Mr. Baeder is to the effect that "he made all entries in the books of said firm *together with the deceased book-keeping director*, that he figured all cost records and that he made all respective entries in said books according [to] the instructions and supervision of the attorney Carl Weichel," it is considered that the evidence here before the court is still insufficient upon which to find cost-of-production values for the merchandise in question. [Italics added.]

In the test case it was found from the record that "there were no books of account or other records of the manufacturer separately showing its general expenses and profit" and that "Weichel did not obtain his information solely from the regular books of account of the manufacturer, but from other persons as well."

It being the view of the court that exhibits 3 and 4 do not overcome the deficiencies in the test case which led to its dismissal by the appellate court, there is no other course to follow here but to consider the ruling in the test case as *stare decisis* with respect to the present case.

Plaintiff herein having failed to supply sufficient evidence upon which to find values based upon cost of production, as defined in section 402 (e) and section 402 (f) of the Tariff Acts of 1922 and 1930,

respectively, and the appeals for reappraisement having arisen prior to the effective date of the Customs Administrative Act of 1938, the appeals enumerated in schedule "A," attached to and made part of this decision, are therefore dismissed.

Judgment will issue accordingly.