(A. R. D. 13)

GERHARD & HEY CO., INC. (PHILIPP WIRTH) *v.* UNITED STATES

Entry No. 896245, etc.

Third Division, Appellate Term

(Decided January 15, 1953)

*Lamb & Lerch (John G. Lerch* and *David A. Golden* of counsel) for the appellant.
*Charles J. Wagner,* Acting Assistant Attorney General (*Daniel I. Auster,*
special attorney), for the appellee.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This is an application for review of the decision
and judgment of the court below, dismissing the appeals enumerated
in schedule "A," hereto attached, on the ground that plaintiff had
"failed to supply sufficient evidence upon which to find values based
upon cost of production, as defined in section 402 (e) and section
402 (f) of the Tariff Acts of 1922 and 1930, respectively." *Gerhard
& Hey Co., Inc. (Philipp Wirth)* v. *United States,* 27 Cust. Ct. 479,
Reap. Dec. 8063.

The merchandise involved herein consists of filters and filtering
material exported from Germany in 1930, 1931, 1932, and 1933. It
was invoiced at certain *per se* prices, less a stated discount. Entry
was made under duress, and the merchandise was appraised on the
basis of foreign value, as defined in section 402 (b) of the Tariff Act of
1922 and section 402 (c) of the Tariff Act of 1930, at the same *per se*
prices but less a smaller discount than invoiced.

As noted in the decision below "the lapse of time in the disposition
of the present case is due largely to several delays incident to appeals
to the appellate division and to the appellate court in the test case, and

to difficulty in securing evidence from Europe because of unsettled world conditions."

The parties agreed at the trial that the merchandise in the instant case was substantially the same as that involved in *United States* v. *Philipp Wirth et al.* and *Philipp Wirth et al.* v. *United States*, 24 C. C. P. A. (Customs) 188, T. D. 48654, hereinafter referred to as the test case. It was further agreed that there is no foreign value, no export value, and no United States value applicable to the present merchandise, and that the cost of production is the proper basis for appraisement thereof.

The evidence herein consists entirely of documents, some of which were used in the test case, *supra*, and some of which were offered for the first time in this case.

Plaintiff's collective exhibit 2 consists of an affidavit of Carl Weichel, legal adviser and general supervisor of Seitz-Werke of Bad Kreuznach, Germany, sworn to February 10, 1933, together with an exhibit containing certain cost-of-production statistics. Mr. Weichel states in the affidavit that he has been connected with Seitz-Werke since July 4, 1929, from which time he has had charge of the cost records of the company, and has had possession of the records kept by his predecessors back to 1926. He states that in connection with merchandise shipped to Philipp Wirth, Inc., the firm's United States agent, he has taken from the records, which he knows to be accurate company records of costs, the following items: The cost of labor, material, fabrication, manipulation, or other process employed in manufacturing the merchandise, the usual general expenses, and the profits, which amounts are set forth in the attached exhibit. It appears further that the only competitors of Seitz-Werke were two firms known as Clarit Werk and Peska Union, which were engaged in business from 1925 to 1929 and from 1925 to 1931, respectively. The prices realized by these firms on articles of the same class and kind as those shipped to Philipp Wirth, Inc., were 10 per centum below the prices obtained by Seitz-Werke. Since those firms were taken over by Seitz-Werke, the profits of the latter consisted of enumerated percentages of the cost of materials, fabrication, and manipulation, set forth in the attached exhibit. The exhibit lists in five columns (1) the names of machines, (2) the cost of materials, fabrication, labor, manipulation, or other process, (3) the cost of containers, coverings, and all other packing costs, (4) the percentage of usual general expenses based on column 2, and (5) the percentage of net profit based on column 2.

Plaintiff's collective exhibit 1 consists of an affidavit of Carl Weichel, sworn to October 20, 1933, and an attached schedule. The affidavit connects certain invoice descriptions with information given in plaintiff's collective exhibit 2. The schedule lists additional articles and costs in the same five columns as in the exhibit attached to plaintiff's

collective exhibit 2, except that column 5 gives the percentage of net profit based on columns 2 and 4.

In an affidavit sworn to May 18, 1949 (plaintiff's exhibit 3), Mr. Weichel states that at the time he executed the affidavit of February 10, 1933, he had personal supervision of the books of Seitz-Werke; that all entries were made under his instructions; and that he had personal knowledge of the entries. The affidavit continues:

That as attorney for the Company, when he received a request for a sworn transcript of the records of the Company, he personally retained accountants to make the transcript under his supervision and instructions; that he can certify from his personal knowledge that the figures contained in the affidavit of February 10, 1933, are true and accurate und [sic] represent, to his personal knowledge, the actuel [sic] costs to the Company; that as attorney for the Company, over the period covered by the affidavit of February 10, 1933, it was his responsibility to know the accuracy of all entries made in the books of the Company and that it was his responsibility to see that they were accurately transcribed in the tabulation attached to the affidavit.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Deponent further states that while he did not personally make the entries in the books, he had actual knowledge and personal contact and supervision of the making of the records and that he knows of his own knowledge that they are true and accurate.

In an affidavit sworn to May 18, 1949 (plaintiff's exhibit 4), Theodor Baeder, head of the bookkeeping department of Seitz-Werke, states that during the years 1928 to 1935 he made all entries in the books of Seitz-Werke together with the deceased bookkeeping director, figured all cost records, and made all entries in accordance with the instructions and under the supervision of Carl Weichel. He added that "he knows all of the facts given in the affidavit of the attorney Carl Weichel to be true of his own knowledge."

Defendant introduced into evidence three reports of Treasury Representative Charles Kruszewski, dated May 15, 1933 (defendant's exhibit B), September 20, 1933 (defendant's collective exhibit A), and July 7, 1937 (defendant's exhibit C), respectively; a copy of a letter, duly authenticated, from the Consular Branch, Office of the Political Adviser for Germany, Frankfort, to the Department of State, Washington, D. C., dated June 23, 1949 (defendant's exhibit E), and a copy of a telegram, duly authenticated, from James W. Riddleberger, Counselor of Mission, Frankfurt, to the Secretary of State, dated June 22, 1949 (defendant's exhibit F).

According to the reports of Mr. Kruszewski, he visited the office of Seitz-Werke in Bad Kreuznach, Germany, on several occasions and obtained information from the books of the company and from interviews with Mr. Weichel, George Seitz, president of the company, the manager, Mr. Reininger, and the chief of the calculation department, Mr. Juenger. In reference to the tabulation attached to Mr. Weichel's

affidavit of February 10, 1933, he reported in answer to questions posed by the Treasury Department, as follows: Mr. Seitz checked the draft of the tabulated sheets and representative cost cards submitted by the calculation department, and, after convincing himself that the figures were based on actual cost records, gave his approval to have the tabulations written by one of his draftsmen. In preparing the tabulation, Mr. Weichel was assisted by data furnished by manager Reininger, in charge of the bookkeeping section, by Mr. Juenger, chief of the calculation department, and in regard to the packing charges, by the forwarding department. Mr. Juenger prepared a memorandum showing the "cost of materials, fabrication, labor, manipulation or other processes," the original of which was sent to Mr. Weichel. Mr. Weichel rearranged it somewhat but used the figures furnished by Mr. Juenger. Mr. Juenger based his figures on data given in the available cost records.

The report dated May 15, 1933, contains a detailed breakdown of the cost of labor and materials of articles known as "Furka" filters Nos. I to V for the year 1931. The final figures for each check with the figures given for these articles in column 2 of the exhibit attached to plaintiff's collective exhibit 2.

The three reports of the Treasury representative also set forth the manner in which percentages for general expenses and profits for the merchandise were calculated.

The letter from Consular Branch, Office of the Political Adviser for Germany, Frankfort, *supra*, states that a telephone conversation was held with the office of the production manager of Seitz-Werke and one Mr. Liebler said that no data in regard to the cost of production of merchandise exported between 1929 and 1939 were available; that selling prices could be determined from old price lists, but that the profit margin could not be calculated for each item since the mark-ups would not necessarily be the same for all products.

The telegram from James W. Riddleberger, Counselor of Mission, *supra*, states:

Seutz Wejke [*sic*], Kreuznach, not able give production costs asbestos products 1929/1939.

In the test case, *supra*, the affidavits of Carl Weichel, dated February 10, 1933, and October 20, 1933, respectively, and the reports of Treasury Representative Kruszewski, dated May 15, 1933, and September 20, 1933, respectively, were before the court. In that case, the decision of the appellate division, dismissing the appeals for failure of proof, was affirmed. The following points were brought out by the court in its decision: The mere fact that Mr. Weichel had charge of the cost records of the manufacturer did not entitle his statements respecting their contents to weight. There were no books of account or other records of the manufacturer separately showing its

general expenses and profit. Mr. Weichel did not obtain his information solely from the regular books of account of the manufacturer, but from other persons as well.

Plaintiff contends that the additional evidence offered in the instant case remedies the deficiency of proof in the test case and claims that the information contained in plaintiff's collective exhibits 1 and 2, when taken together with plaintiff's exhibits 3 and 4, is sufficient to prove the cost of production figures contained in the affidavits of Carl Weichel. It is also pointed out that the test case involved shipments going back to 1926 at which time Mr. Weichel was not connected with Seitz-Werke, while the instant importations began in 1930, some time after he became associated with that company.

The evidence offered by the plaintiff tends to show that Mr. Weichel had charge of the cost records of the company since July 4, 1929; that entries were made under his instructions; and that he had personal knowledge of such entries. It is also stated that he personally retained accountants to make the transcript of the records of the company and that the figures in the affidavit of February 10, 1933, represented to his personal knowledge the actual costs of production. On the other hand, the information obtained by Treasury Representative Kruszewski, noted above, indicates that Mr. Weichel's tabulation was not obtained entirely from the books or from his own knowledge, but that he relied upon data furnished by other persons. Plaintiff claims that while the figures prior to July 4, 1929, may have been based upon information given by others, the figures after that date were obtained from entries made under Mr. Weichel's personal supervision. However, the exhibits do not make any such distinction. Neither Mr. Weichel's affidavits nor the reports of the Treasury representative differentiate between the period before July 4, 1929, and the period thereafter. While it may be assumed that Mr. Weichel had some personal knowledge of the costs during the latter period, he may also have relied upon information obtained from others. It is not clearly established that he did not do so. The evidence given by him is, therefore, not conclusive.

Plaintiff has referred to the recent case of *United States* v. *Malhame & Co. et al.*, 39 C. C. P. A. (Customs) 108, C. A. D. 472. There, an affidavit was received into evidence in which deponent stated that he was personally familiar with the costs of manufacture of the involved merchandise; that the records had always been kept under his supervision; that while the records, except for 1 year, were not in existence, he had a distinct recollection, confirmed by the said records, of the costs, usual general expenses, and profit. To the affidavit was attached a schedule setting forth the various items making up the cost of production of each article. The court held that the affidavit was

substantial evidence of the material facts and found value on the basis of cost of production. There was no indication, as there is here, that the affiant may not have had full personal knowledge of the facts, but relied, or may have relied, upon information given by others.

In the instant case, even if Mr. Weichel's tabulations are given full credit, they are not sufficient to establish cost of production as defined by the pertinent statutes. Section 402 (f) of the Tariff Act of 1930 (which is identical to section 402 (e) of the Tariff Act of 1922) provides as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

It is to be noted that where the allowance for profit is a percentage, it must be computed upon the sum of the items, (1) cost of materials, etc., and (2) the usual general expenses. *United States* v. *Maier*, 18 C. C. P. A. (Customs) 409, T. D. 44679. In the tabulation attached to Mr. Weichel's affidavit of February 10, 1933, the profit is given as a percentage of the cost of materials, etc., only, while in the tabulation attached to the affidavit of October 20, 1933, the profit is given as a percentage of the cost of materials, etc., plus the usual general expenses. On its face, therefore, plaintiff's proof is sufficient to cover only the articles enumerated in the schedule attached to the second affidavit.

However, plaintiff claims that the deficiency is made up by the reports of the Treasury representative produced at the trial by the defendant. Such evidence, if sufficient, may properly aid plaintiff in establishing a *prima facie* case. *Wm. A. Foster & Co., Inc.* v. *United States*, 15 Cust. Ct. 459, Reap. Dec. 6233; *Fred Selig* v. *United States*, 21 Cust. Ct. 342, Reap. Dec. 7633.

It appears from the said reports that the basic percentages added by Seitz-Werke as "general expense and profit" have never been carried separately on the books of the company. In order to find separate amounts for the two items, the following method of calculation was devised: The amount of the "material and processing cost" was used as a basis and was denominated 100 per centum. To this was added a so-called key addition for general expenses and profit. For the period here involved, the key addition was 140 per centum, making the calculated gross selling price 240 per centum. From this was deducted the applicable trade discount, which for the United States was 25 per centum of 240 per centum or 60 per centum, leaving 180 per centum as the net invoice price. From this was deducted 100 per centum (the material and processing cost), leaving 80 per centum for general expense and profit.

In order to determine the percentage covering general expense alone the amount covering the entire gross turnover was divided by the amount covering "general expenses" shared by the American importer. In 1931, this figure was 22.5 per centum. The following formulas were then used (defendant's exhibit B):

$$\frac{240}{140}=\frac{100}{x} \text{ or } 14,000:240=58.3\%$$ "comparative term related to total turnover".

$$\frac{140 \quad . \quad 22.5}{58.3}=31,500:583=54\%$$ "general expense" on column 2 as stated in column 4 in tabulation.

Profit 1931:

180% calculating selling price for U. S. A.

less 100% for material and processing cost

80%

less 54% for "general expense".

26% "profit" on column 2 (material and processing cost) as stated in column 5 of tabulation.

*OR*

"profit" on column 2 plus 4 (material and processing cost plus general expense.)

$$=\frac{58.3 \quad . \quad 26}{140}=15,158:140=10.7\%.$$

It is evident that these calculations do not supply the actual amounts of the usual general expenses or of the profit ordinarily added in connection with the manufacture of the instant merchandise. Whether the amounts used for gross turnover include the entire output of the manufacturer or only that part sold to the United States is not clear. Since the figure used for general expenses is an amount shared by the American importer, it may include items having nothing to do with the cost of producing the merchandise. For instance, it is questionable whether selling expenses may be included in the cost of pro-

duction. *United States* v. *Kleberg & Co., Inc., et al.*, 25 C. C. P. A. (Customs) 142, T. D. 49256.

The courts have indicated that profit may not be based upon an *average* profit nor upon an *estimated* profit, but must be based on the profit ordinarily added. *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.*), 31 C. C. P. A. (Customs) 75, C. A. D. 252; *United States* v. *Jovita Perez*, 36 C. C. P. A. (Customs) 114; C. A. D. 407. Neither do we think that profit can be determined by means of a formula, which may or may not result in the actual profit and the actual general expenses involved in the manufacture of the particular merchandise. Note also that the general expenses to be added are not a percentage of the general turnover of the manufacturer, as here, but those incurred in the production of "such or similar merchandise." *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378..

That the above calculation does not give the actual general expenses and profit of the various items involved is indicated by a statement of the German accountants quoted by Treasury Representative Kruszewski in his report of September 20, 1933, as follows:

\* \* \* even with a greater expenditure of time we would not have been able to complete our task with reference to the determination of the corresponding net profit or loss, inasmuch as all the necessary prerequisites therefor, especially an analogous distribution of the general expenses for the various types of merchandise produced, are missing and could not subsequently be prepared.

Since the accountants found that various necessary figures were missing because the manufacturer did not keep certain records, the usual general expenses and the addition for profit cannot be definitely ascertained. We conclude that the evidence presented is not sufficient to establish the cost of production of each item in accordance with the terms of the pertinent statutes.

The merchandise herein was appraised not later than 1933, which is prior to the effective date of the Customs Administrative Act of 1938, and, as the plaintiff has failed to establish a *prima facie* case, its appeals are subject to dismissal. *G. & H. Transport Co., Inc. (Philipp Wirth)* v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78; *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286.

On the record herein, we find as facts:

1. That the merchandise herein consists of filters and filtering material exported from Germany in 1930, 1931, 1932, and 1933.

2. That on the respective dates of exportation of the involved merchandise there existed no foreign value, no export value, and no United States value, as such values are defined in section 402 (b), (c), and (d) of the Tariff Act of 1922 and section 402 (c), (d), and (e) of the Tariff Act of 1930, respectively.

· 3. That the evidence herein is insufficient to establish the cost of production of the said merchandise within the meaning of section 402 (e) and section 402 (f) of the Tariff Acts of 1922 and 1930, respectively.

We conclude as a matter of law that as the plaintiff has failed to establish the cost of production of the items involved herein in accordance with the pertinent statutes, the appeals for reappraisement were properly dismissed by the trial court.

The decision and judgment of the trial court are accordingly affirmed.