(Reap. Dec. 10625)

CHICAGO BIRD & CAGE CO. *v.* UNITED STATES

Entry No. 17069.

(Decided November 19, 1963)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* of counsel) ; *Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel), associate counsel; for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Samuel D. Spector, Daniel I. Auster,* and *Morris Braverman,* trial attorneys), for the defendant.

WILSON, Judge: The merchandise involved in this appeal consists of certain birdcages, exported from Nürnberg, Germany, by Netra & Co., on April 5, 1957. The cages were appraised on the basis of United States value in dollars. Evidently, the unit price was the value of a single cage, and the valuation was determined by the purported United States value of similar birdcages.

The importer contends that there was no statutory foreign or export value at the time of exportation, and, furthermore, that there was no statutory United States value, and that the proper basis for appraisement is cost of production.

The plaintiff offered no evidence covering foreign and export values, but relied upon the presumption that, since the official appraisal was based upon United States value, it is to be presumed that the ap-

praiser found no foreign or export value to exist. In support of this position, plaintiff cites the case of *United States* v. *A. N. Deringer, Inc.*, 46 Cust. Ct. 762, A.R.D. 127, in which it is held—

* * * that when the appraiser adopted cost of production as the basis for appraisement of this merchandise, the presumption of correctness attaching to such action implies that the appraising officer found neither a foreign, export, nor United States value for such or similar merchandise. *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 C.C.P.A. (Customs) 243, C.A.D. 558, and *Golding Bros. Co., Inc.* v. *United States*, 21 C.C.P.A. (Customs) 395, T.D. 46926. As stated in the decision of the trial judge, "the presumption of correctness here legally implies that the appraiser made findings as to all the elements requisite to determine that cost of production value was the correct dutiable value of this merchandise." The principle was applied very recently in *B. A. Mc-Kenzie & Co., Inc., et al.* v. *United States*, 47 C.C.P.A. (Customs) 143, C.A.D. 748, which was decided subsequent to the decision here under review. The *McKenzie* case involved appraisement of certain rifles manufactured in Sweden, and, in the course of its decision therein, the appellate court stated that "the appraiser in adopting the cost of production as the proper basis upon which to determine the value of the importations must have concluded that no facts existed upon which foreign value could be predicated."

It would appear, therefore, to make no difference that in the instant case the appraisement was based upon statutory United States value, because it may be presumed that it was found by the appraiser that no foreign or export value existed for the involved merchandise. This view is not challenged by the Government in its brief.

The contention of the plaintiff is that there is no statutory United States value, and that the merchandise should have been appraised upon the basis of cost of production on the date of exportation, as provided in section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The statutes involved read as follows:

Section 402a(e), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Section 402a(f), Tariff Act of 1930, as amended, *supra:*

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchan-

dise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The first question here for determination is whether or not there is a statutory United States value for the involved merchandise. In support of its contention that no such value existed, plaintiff introduced and there was received in evidence an affidavit of Alfred A. Mazer (plaintiff's exhibit 2), wherein the affiant stated as follows:

I am the proprietor of Alfred A. Mazer, located at 10802 Los Alamitos Blvd. in the City of Los Alamitos, California. My company is engaged in the business of selling bird cages, and other equipment, and supplies for pets, including bird cages imported from Germany. I have been in this same line of business for the past 32 years, during which time my work has included buying bird cages, and selling the same in my own establishment as well as on the road.

It is the policy of my company to sell bird cages to selected wholesalers and to selected dealers (retailers). The basis on which my company chooses its customers is as follows: in various key spots.

My company does not sell or offer bird cages to all persons, but only to selected wholesalers and dealers in California, and the following western states: Oregon & Washington.

The facts just set forth were equally true throughout the year 1957. The following are the only customers to whom my company sold bird cages during that year: Pemco & Sears & Roebuck Co.

My company would refuse to sell, and during the year 1957 did refuse to sell bird cages to any wholesalers or dealers other than those selected in the manner described earlier in this affidavit.

The wholesalers to whom my company sells bird cages are restricted to reselling within their own geographical territories, in other words to refrain from going into the territories of the other wholesalers to whom my company sells bird cages. This was likewise true throughout the year 1957.

Four witnesses testified on behalf of the plaintiff. Mr. Sidney Meyers, partner in the plaintiff concern which deals in the sale of live birds, birdcages, and accessories for birds and animals in general, testified that a minimum of 90 percent of its business is sold through the firm's own retail outlets, which are leased pet departments in three de-

partment stores in Chicago, three in Ohio, and a few in the east coast areas (R. 8). He stated that these outlets are operated by his own employees and are paid by his firm; that, of the other 10 percent, some sales were made to Montgomery Ward and Spiegels, both mail-order houses, and to Kress, a "five-and-ten-cent" store, and to some carnival dealers. He testified that he did not offer his merchandise to all mail-order houses or to all five-and-ten-cent stores (R. 8-9).

Plaintiff's second witness was Mr. Mervin Savitt, secretary-treasurer of Reliance International Mfg., Ltd., domestic dealer in pet supply and accessory business. The substance of his testimony was to the effect that his firm had wholesalers set up in certain parts of the country that were exclusive for his sales and also sold to chainstores, which had 10 or more stores like Woolworths, W. T. Grant, and S. S. Kresge, sales to chainstores being restricted to the latter class of clientele; that, in areas where his company sold to an exclusive wholesaler, a sale to a retailer in that area would be an isolated case (R. 25). On cross-examination, Mr. Savitt stated that his firm did not contract in writing with any of the wholesalers to whom it sold (R. 28), but that "in certain cases" it was not free to sell to anyone in the United States, such as a case where a wholesaler had an exclusive territory (R. 29). Subsequently, he testified that, in the ordinary course of trade, his firm does not sell to dealers, but only to wholesalers and chainstores (R. 76).

While the testimony of plaintiff's witness Savitt in this case appeared at times inconclusive on the question of whether or not his concern offered merchandise of the kind here imported, without imposing restrictions upon its purchasers in the United States, and, as disclosed by the record, required further clarification at a subsequent hearing, yet, I am persuaded that, on the whole, the testimony as given by this witness on the relevant question established that sales of birdcages made by his firm did not accord with a free offering within statutory limitations.

Plaintiff's third witness was Mr. Louis Hershey, proprietor of Hershey Co. He testified that, in 1957, he was selling German birdcages in the United States, mostly to wholesalers but not to all wholesalers (R. 34); that, because he could not cover the entire country, he restricted his trade primarily to the eastern half of the United States where he did not offer birdcages to all wholesalers but only to some of them; that the wholesalers to whom he sold would resell to retail outlets; that he would sell his merchandise to dealers or retailers in cases where he had some surplus cages, but "that was only on few occasions" (R. 35). The witness further testified that, in areas where he did have wholesalers, he limited their number to those who were "sufficiently capable of taking care of the retailer or the store dealer" and that he would not sell to any other wholesaler in that

district. The testimony of this witness, on cross-examination, did not substantially alter that previously given by him.

Defendant's exhibit A is a report of a customs agent dealing with the business of plaintiff's witness Hershey. While this report does state that Hershey sells to dealers and jobbers without restriction, this statement would appear to be overcome by the sworn statements of plaintiff's witness at the trial to the effect that Hershey did not freely offer or sell birdcages to all purchasers, but only to certain selected ones whose resales, in turn, were further restricted.

The testimony of plaintiff's last witness is disregarded as having any bearing on the question whether or not a United States value existed for the involved merchandise, it appearing that, in 1957, he did not sell birdcages that were imported from Germany.

In my opinion, plaintiff's oral evidence and the affidavit of Alfred A. Mazer (plaintiff's exhibit 2) are sufficient to establish that there was no United States value for the involved merchandise.

In *A. N. Deringer, Inc.* v. *United States*, 40 Cust. Ct. 810, Reap. Dec. 9145, the court, in holding that there was no foreign, export, or United States value for the merchandise there involved, stated, page 814, as follows:

> There is little room to doubt that the record as presently constituted, which has once again been carefully reviewed, supports the conclusions heretofore reached in this case, as to the nonexistence of foreign, export, or United States values for the merchandise at bar. It has been established, without any evidence to controvert it, that the manufacturer of the imported doors imposes restrictions upon all sales and offers for sale which reach out and restrain all purchasers, except the retail lumber dealer, in their further distribution of the manufacturer's product. It has also been established that the retail lumber dealer sells only to the ultimate consumer.
>
> With the limitations upon full dominion which have been here shown to be in effect, there is a complete denial of the freedom of offer and open competition which underlie the statutory definitions of the three bases of value set forth respectively in subdivisions (c), (d), and (e) of section 402 of the Tariff Act of 1930. * * *

In that case, the record disclosed that the foreign manufacturer of the merchandise in question sold his product only to selected wholesale and retail lumber dealers, both for home consumption and for export, at prices which depended upon the status of the purchaser, as well as on the quantity sold, and accompanied sales to wholesalers by restrictions as to territory, class of purchaser, and price upon resale. In my opinion, the situation in that case parallels that which prevails in the case at bar, except that, in the present instance, the restrictions and controls upon the sale of the birdcages in question were imposed not by the manufacturer but by the importer in its sales of merchandise in the United States. These restrictions, however, reached out and restrained all purchasers, except the retail stores

which sold only to the ultimate consumers. There being no free offers or sales in this country of merchandise such or similar to that here involved, I conclude there is no United States value for the importations in question.

There remains for determination the question whether or not plaintiff in this appeal has established a cost of production for the involved merchandise within the statutory limitations. To support the contention that cost of production (section 402a(f) of the Tariff Act of 1930, as amended) was the correct basis of appraisement, and to establish statutory cost of production, plaintiff relies upon an affidavit of Johann Hanke (plaintiff's exhibit 1), partner during the year 1957 in the firm of Netra & Co. of Nürnberg, Germany, manufacturer and exporter of the involved merchandise. The affiant, in said affidavit, recites:

> During the years 1955, 1956 and 1957 I was connected with Netra & Co., Nürnberg. Originally I was a partner and manager, and during the year 1957 I was the proprietor. At all times during the years 1955, 1956 and 1957 I managed and controlled all the production and sales of bird cages manufactured by my company. I have personal knowledge of the bird cages which my company sold during those years for home consumption in Germany as well as for exportation to the United States and other countries. I also have personal knowledge of the sales policies and practices of the company, and the selling prices of the various articles sold by the company, as well as their cost of production.

> Although the company has now gone out of business, I have access to the books and records of the company for the years 1955, 1956 and 1957 which were maintained under my direction and supervision. The costs and other figures as well as other statements in this affidavit are taken from the books and records and are based upon my personal experience with the company. I have personal knowledge of the bird cages which were the subject of Netra & Co.'s invoice dated April 1, 1957 to Chicago Bird and Cage Co., Chicago, covering 2300 cartons of bird cages, model numbers 566, 336, 230 and 203, which I am informed and believe are the subject of Chicago entry No. 17069 dated May 13, 1957, Reappraisement No. R59/16199–11093.

> Based upon my experience with Netra & Co. and my examination of their books and records, I am fully familiar with the selling methods and conditions under which the company sold bird cages for home consumption in Germany and for exportation to the United States and other countries during the years 1955, 1956 and 1957; and of the respective quantities sold by the company for home consumption in Germany, and also for exportation to the United States and other countries during those years; and I also have personal knowledge of the cost of production, the usual general expenses and all other costs and expenses incurred by the company during those years in connection with the bird cages produced and sold by the company during those three years.

Thereafter, there is set forth, in plaintiff's exhibit 1, certain figures relating to "cost of materials and of fabrication, manipulation and all other processes employed in manufacturing" the birdcages under consideration, as well as the "usual general expenses" incurred in the production of said merchandise, together with the "cost of all con-

tainers and coverings" incident to placing the merchandise in condition for exportation. The affidavit then concludes as follows:

During the year 1957 Netra & Co. sold to the United States the gratest [sic] quantity of bird cages of the same general character and of the same class or kind as those involved in the earlier mentioned invoice of April 1, 1957. The quantity sold to the United States represented 60% of the total quantity sold and was greater than that sold for exportation to other countries or for home consumption in Germany. During the year 1957 the company enjoyed a profit as follows on the bird cages exported to the United States, and this was the profit ordinarily added by the company on bird cages of the same general character and of the same class or kind as those exported to the United States:

| | DM. 1.47 per unit |
|---|---|
| Model No. 566 | DM. 1.47 per unit |
| "    " 336 | "   1.47 "   " |
| "    " 230 | "   1.47 "   " |
| "    " 203 | "   1.26 "   " |

As Netra & Co. did not have access to the books and records of other german manufacturers of bird cages of the same general character or the same class or kind as the bird cages included in the invoice of April 1, 1957 mentioned earlier, and as I have often tried to find out the amount of profit added by other manufacturers, I never succeeded, because it is a secret closely guarded by every manufacturer. However from my knowledge of the cost of production as well as the selling prices of bird cages in general, it may be presumed that the profits of those manufacturers during the years 1955, 1956 and 1957 were not greater than the profits added by Netra & Co. on its sales to the United States.

The Government, in its brief, maintains that the evidence adduced on behalf of the plaintiff does not meet the requirements to establish a statutory cost of production of the involved merchandise. Specifically, it contends, *inter alia*, that even if the affiant Hanke (plaintiff's exhibit 1) had charge of the cost records of the exporter, Netra & Co., as alleged, this factor does not entitle the statements in his affidavit to probative value or weight. In this connection, the defendant directs our attention to the holding of the court in *Gerhard & Hey Co., Inc. (Philipp Wirth)* v. *United States*, 30 Cust. Ct. 580, A.R.D. 13, claiming, in effect, that the conclusion reached there by the court is equally applicable in the case at bar. In the *Gerhard & Hey* case, *supra*, it appeared that the legal advisor and general supervisor of the manufacturer had made on behalf of the importer certain representations in an affidavit relative to cost-of-production statistics involving the merchandise under consideration. The affiant therein further stated in a second affidavit that he had personal supervision of the books of the manufacturer, that the entries in same were made under his supervision, and that he had personal knowledge of such entries. There is, however, a distinction between the situation which obtained in the *Gerhard & Hey* case, *supra*, and that which prevails in the present case. In the former case, it appeared that the information as given by the above-referred-to affiant, upon which the plaintiff therein relied to establish cost-of-production figures for the merchandise there in-

volved, was not obtained *solely* from the regular books of account of the manufacturer, but from other persons as well. The court, in the *Gerhard & Hey* case, pointed out that, as appeared from a report of a Government agent, the tabulation as to cost of production which was given in the affidavit under consideration was not obtained entirely from the manufacturer's books of account or from his own knowledge, but that the affiant relied upon data furnished from other persons. In this connection, the court, in the *Gerhard* case, *supra*, page 585, stated:

\* \* \* Plaintiff claims that while the figures prior to July 4, 1929, may have been based upon information given by others, the figures after that date were obtained from entries made under Mr. Weichel's personal supervision. However, the exhibits do not make any such distinction. Neither Mr. Weichel's affidavits nor the reports of the Treasury representative differentiate between the period before July 4, 1929, and the period thereafter. While it may be assumed that Mr. Weichel had some personal knowledge of the costs during the latter period, he may also have relied upon information obtained from others. It is not clearly established that he did not do so. The evidence given by him is, therefore, not conclusive.

The defendant, in this case, likewise cites as controlling in the determination of the sufficiency of the statements of the affiant Hanke, the case of *United States* v. *Philipp Wirth et al.* (*Philipp Wirth et al.* v. *United States*), 24 CCPA 188, T.D. 48654. That case made reference to the rule approved by our appellate court in the case of *United States* v. *Brown & Co.*, 4 Ct. Cust. Appls. 102, T.D. 33374, wherein, page 103, it was said:

\* \* \* A difficulty with the importers' contention is found in the fact that the testimony offered was that of the manager of the steamship companies, who produced his books showing the entries of certain wantage in these cases, purporting to have been made by clerks on the wharves upon the statement of the coopers who opened the cases and made notations on the packages. It is not claimed by the witness who was produced that he had any personal knowledge of the facts, and there was no witness offered who had such personal knowledge. Nor was their absence accounted for by showing their death, absence from the jurisdiction, or other disability. The books were not under these circumstances without corroboration admissible as substantive proof of the fact of wantage in these cases. See Chaffee *v.* United States (85 U.S., 516, 539 *et seq.*).

In the case at bar, however, it appears that the affiant Hanke had personal knowledge of the cost-of-production figures of the birdcages produced by the manufacturer herein for the periods of exportation in question and, further, that the costs and other figures were taken from the books and records of the manufacturing company, which books and records were maintained under the supervision and direction of the affiant and to which the affiant had access. There is no indication, in the present record, that the affiant, in making statements as to cost-of-production figures for the merchandise here involved, re-

lied upon information given him by other persons. Therein, in my opinion, lies the distinction between the situation in the *Gerhard & Hey* case, and the *Philipp Wirth* and *Brown & Co.* cases, *supra*, and that which appears in the case at bar. Accordingly, I find that the statements made by the affiant Hanke, as given in plaintiff's exhibit 1 relative to cost-of-production figures for the involved merchandise, constitute a *prima facie* case as to establish a value for the merchandise on a cost-of-production basis. This testimony has not been offset by any evidence on the part of the defendant.

On the basis of the record in this case, I find as facts:

1. That the involved merchandise consists of four models of birdcages, exported from Germany on April 5, 1957, by Netra & Co. of Nürnberg, Germany.

2. That appraisement of the merchandise was made on the basis of United States value, as defined in section 402a(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. That, during the period in question, such or similar merchandise was not offered or sold in the United States to all purchasers, but was sold only to selected wholesalers with exclusive territories and to retailers and other selected purchasers.

4. That the wholesalers in question were restricted to making sales in their own exclusive districts.

5. That these wholesalers sold only to retailers who, in turn, sold only to ultimate consumers.

6. That, during the period in question, the greatest volume of sales made by the exporter herein was made to the United States.

7. That the profit ordinarily added by other manufacturers in Germany of merchandise of the same general character as that under consideration was not reasonably ascertainable.

8. That the cost of materials and labor, the usual general expenses, the cost of packing and containers, and the profit ordinarily added for the birdcages in question are as follows, per unit, in German DM:

| Model No. | Cost of materials and labor | General expenses | Packing and containers | Profit | Total |
|---|---|---|---|---|---|
| 566 | 4.41 | 1.89 | 1.68 | 1.47 | 9.45 |
| 336 | 4.41 | 1.89 | 1.68 | 1.47 | 9.45 |
| 230 | 4.41 | 1.89 | 1.68 | 1.47 | 9.45 |
| 203 | 2.94 | 1.30 | 1.26 | 1.26 | 6.76 |

9. The respective costs of production of the birdcages in question are as follows:

| Model No. | Cost of production |
|---|---|
| 566 | DM 9.45 per unit |
| 336 | DM 9.45 per unit |
| 230 | DM 9.45 per unit |
| 203 | DM 6.76 per unit |

I conclude as matters of law:

1. Such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Germany for home consumption or for exportation to the United States, within the contemplation of section 402 (c) and (d), respectively, of the Tariff Act of 1930, as amended.

2. Such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the United States, within the contemplation of section 402a(e) of the Tariff Act of 1930, as amended.

3. Cost of production, as defined in section 402a(f) of the Tariff Act of 1930, as amended, is the proper basis for the determination of the value of the merchandise in question.

4. That such cost of production is as set forth in finding of fact No. 9, *supra*.

Judgment will issue accordingly.