(Reap. Dec. 8390)

A. N. DERINGER, INC. *v.* UNITED STATES

Entry No. A–4897.

(Decided February 18, 1955)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the defendant.

OLIVER, Chief Judge: This appeal for reappraisement relates to merchandise that is described on the invoice as "Unik Doors No. 90— Stain Grade," and which was exported by Canada Flushwood Door, Ltd., of Terrebonne, Quebec, and imported by the Concord Lumber Co., Inc., of Albany, N. Y. Entry was made at prices enumerated below. Appraisement was made at higher unit prices, which the appraiser regarded as foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938. The entered and appraised values of the different sizes of doors under consideration are as follows:

| Size | Entered value (Canadian dollars) | Appraised value (Canadian dollars) |
|---|---|---|
| 1'6'' x 6'6'' x 1⅜''_____ | $6.20 | $6.30 |
| 1'8'' x 6'6'' x 1⅜''_____ | 6.20 | 6.30 |
| 2'0'' x 6'6'' x 1⅜''_____ | 6.20 | 6.30 |
| 2'4'' x 6'6'' x 1⅜''_____ | 6.60 | 6.80 |
| 2'6'' x 6'6'' x 1⅜''_____ | 6.80 | 7.00 |
| 2'8'' x 6'6'' x 1⅜''_____ | 7.00 | 7.15 |

(all prices are less
0.090909% and
less 5%)

Plaintiff's claims, as set forth in counsel's brief, are that "the cost of production is the proper basis for determining the dutiable values of the above doors and that the cost of production is the same or less than the above entered values; or in the alternative that the freely offered export and foreign values of the above merchandise are the same or less than the above entered values."

The case has been the subject of hearings at Rouses Point, N. Y., where the merchandise was entered, and also at New York, N. Y. The record consists of the oral testimony of two witnesses and certain records of sales. All of the evidence was offered by plaintiff.

An employee of the Canadian exporting company testified, first, at Rouses Point and, later, at New York. The witness stated that he has been associated with the company for 18 years. He began his employment as an accountant. At present, he is the sales manager, having supervision over all sales. His testimony will support the following summation.

The Canadian exporter is a manufacturer of flushwood doors. The shipment under consideration consisted of different sizes of a door of peculiar design, identified as "THE UNIK '90' GREEN SEAL DOOR" (plaintiff's exhibit 2), which is a patented article, the sole manufacturer thereof being the Canadian exporter. It is of a laminated construction that forms the framing of the door. The frame is filled with an egg cratelike construction of 4-inch squares, divided into three sections. "This door is ventilated all throughout. It is the only door manufactured in Canada that way." Sales by the Canadian manufacturer in the foreign market for home consumption are in carload lots and in quantities of less than carload lots. A carload lot is understood to be a minimum of 600 doors, but sometimes the quantity is as many as "1100 doors in a car." At the time of exportation of the present merchandise, the manufacturer confined its sales in the Canadian market for home consumption to two classes of purchasers, i. e.,

wholesalers and lumber dealers, each of whom bought for resale. Wholesalers, who had warehouse facilities for storing the doors they purchased, received a discount of 10 per centum. Lumber dealers had no such storage facilities, so they paid the list price net.

The Canadian manufacturer's sales of these doors to the United States were confined to distributors who were required to provide adequate storage facilities for the merchandise. Each distributor was limited in the sale of these doors to a definite area or territory, allocated by the Canadian manufacturer and exporter. The distributors were further restricted in their disposition of the doors, being required to sell to lumber dealers for resale.

Nine groups of invoices were received in evidence (plaintiff's collective exhibit 1). They were identified as representing all sales by the Canadian manufacturer of "Unik No. 90" doors during the months of December 1949, January 1950, and February 1950. An examination of them shows that in several groups, particularly those relating to transactions in the foreign market for home consumption (plaintiff's collective exhibits 1-A, 1-B, 1-D, 1-E, 1-G, and 1-H), many individual invoices refer to one order, indicating that they are partial deliveries under a single contract or a general order, rather than separate sales. For example, in the groups allegedly relating to carload lots sold in the foreign market for home consumption, 7 of the invoices, bearing dates in December 1949 (plaintiff's collective exhibit 1-A), 9 of the invoices, bearing dates in January 1950 (plaintiff's collective exhibit 1-D), and 12 of the invoices, bearing dates in February 1950 (plaintiff's collective exhibit 1-G), relate to the Canadian manufacturer's order C-3937. It is also observed that a very small percentage of these invoices cover a carload lot (600 doors, or more). The witness testified that these invoices are grouped according to the quantity ordered and not according to the quantity shipped. As they have been presented before me, however, the invoices cannot be taken as showing the quantity ordered under any particular or given contract.

The witness also offered testimony concerning various elements relating to the cost of production of these doors, but, in view of my disposition of this case, it is unnecessary to outline that phase of the testimony.

The vice president of the importing corporation, the Concord Lumber Co., Inc., of Albany, N. Y., testified that the said corporation is a distributor of these doors in a certain territory in the United States, fixed by the Canadian exporter, and that the corporation's sales in this country are restricted to lumber dealers who resell the doors.

Plaintiff's principal claim, alleging statutory cost of production (section 402 (f) of the Tariff Act of 1930) as the proper basis for appraisement of this merchandise, is based on the premise that

"the goods are not freely offered for sale to all purchasers in Canada or for export to the United States or in the United States." As supporting that contention, I find from the record, as hereinabove outlined, that the "Unik No. 90" doors in question are patented articles of special construction; that they are manufactured exclusively by the Canadian exporter of the shipment in question; that the Canadian manufacturer and exporter restricts itself in the disposition of the merchandise in the foreign market for home consumption by selling only to wholesalers and lumber dealers at different prices, depending on the status of the purchaser; and that the manufacturer also limits its sales to the United States to selected distributors, who are restricted in their disposition of the merchandise in this country under a requirement to sell, within allotted territories, only to lumber dealers for resale.

While it can be said that the Canadian manufacturer, at the time of exportation of the present merchandise, limited its sales in the foreign market for home consumption to certain classes of purchasers, i. e., wholesalers and lumber dealers, at different prices, depending on the category of the purchaser, the condition is not sufficient, in the light of the present record, to eliminate statutory foreign value as the proper basis for appraisement of the doors in question. Pertinent to this phase of the discussion is testimony, elicited on cross-examination of the sales manager of the Canadian manufacturer, reading as follows:

X Q. Did you restrict or in any way limit the persons or kinds of businesses to which your purchasers in Canada could sell these particular doors?

\* \* \* \* \* \* \*

A. We did not.

X Q. In other words, you sold to your regular course of trade?—A. And they in turn could sell to everyone.

X Q. And you did not care to whom and in what manner these particular customers of you resold that merchandise?—A. That is right.

X Q. In other words, you had no limitations in your business either you sold to your regular line of trade, your regular trade, such as wholesalers, jobbers and retailers?—A. Yes.

X Q. And you in turn didn't make any restrictions on your customers?—A. No, we did not.

Other classes of purchasers and users of the "Unik No. 90" doors in question were builders and contractors, and, although quantity orders from contractors were received, the Canadian manufacturer never filled such orders for that class of purchasers.

That the Canadian manufacturer restricted its sales in the foreign market for home consumption to wholesalers and lumber dealers, is well established. The record, however, contains nothing to show that the wholesalers or lumber dealers were limited, or subjected to any re-

strictions, with respect to the resale, use, or other disposition of the merchandise. On the contrary, the testimony, hereinabove referred to, is to the effect that wholesalers and lumber dealers could freely offer the merchandise to all persons who wished to buy. Under such conditions, resales by the wholesaler or lumber dealer might be acceptable toward establishing the foreign market of the merchandise. *United States* v. *H. W. Robinson & Co., State Forwarding Co., and Edgar S. Bibas,* 19 C. C. P. A. (Customs) 274, T. D. 45436.

The reasoning is in line with that followed in the case of *Glanson Co.* v. *United States,* 31 Cust. Ct. 473, A. R. D. 33, wherein the court stated as follows:

The proven fact is that the wholesale trade constituted one of the categories of purchasers to whom the manufacturer sold its wares. Whether that class of trade offered to sell cribbage boards at prices which would, consistent with the provisions of the foreign value statute, enable the selection of a freely offered price to all purchasers for home consumption, is not of record. Until such sales are ruled out, the categorical denial of the existence of a foreign value may not be asserted. We cite the case of *United States* v. *H. W. Robinson & Co., State Forwarding Co., & Edgar Bibas,* 19 C. C. P. A. (Customs) 274, T. D. 45436, as authority for the proposition that resale prices of wholesalers are acceptable as a basis from which to derive a foreign value, if such prices accord with the statutory requirements of being freely offered for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade.

Inherent in the statutory presumption of correctness that is attached to the appraiser's action (28 U. S. C. § 2633) is the existence of every fact that is necessary to sustain the appraised value. *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States,* 28 C. C. P. A. (Customs) 19, C. A. D. 118; *E. I. du Pont de Nemours & Co.* v. *United States,* 27 C. C. P. A. (Customs) 146, C. A. D. 75. Thus, it was incumbent upon plaintiff, under its theory of a restricted foreign market, to show, as part of its direct case, that a restriction or control on sales for home consumption, which prevailed so far as the Canadian manufacturer's transactions were concerned, was maintained by the wholesalers and lumber dealers, the exclusive purchasers from the manufacturer. Plaintiff's failure in this respect is a fatal deficiency in its essential line of proof. Under the circumstances, the evidence before me is insufficient to overcome the presumption of correctness that is attached to the values found by the appraiser.

On the basis of the record before me, I find as matter of fact:

(1) That the merchandise in question consists of so-called "Unik No. 90" doors which are patented articles, manufactured exclusively by Canada Flushwood Door, Ltd., of Terrebonne, Quebec, the exporter of the shipment in question.

(2) That the Canadian manufacturer restricts itself in the sale of these doors in the foreign market for home consumption to wholesalers and lumber dealers, the prices to whom depend on their status.

(3) That there is no evidence showing that wholesalers and lumber dealers restrict their sales either as to resale, use, or other disposition of the merchandise.

Accordingly, I hold as matter of law:

(1) That plaintiff's evidence is insufficient to overcome the presumption of correctness which the statute (28 U. S. C. § 2633) attaches to the values found by the appraiser.

(2) That the proper basis for appraisement of the doors in question is foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, *supra*, and that such statutory values are the appraised values.

Judgment will be rendered accordingly.