(Reap. Dec. 9145)

A. N. DERINGER, INC. v. UNITED STATES

Entry No. A–4897.

(Decided on rehearing [Reap. Dec. 8708] May 6, 1958)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector, William J. Vitale*, and *Richard H. Welsh*, trial attorneys), for the defendant.

RAO, Judge: The instant appeal for reappraisement has had a somewhat protracted history. It is before me now by virtue of an order dated December 7, 1956, 37 Cust. Ct. 591, Reap. Dec. 8708, restoring the case to the calendar "for the sole purpose of permitting the intro-

duction of evidence by both parties with respect to the addition for profit called for by paragraph (4) of the cost of production statute, section 402 (f) of the Tariff Act of 1930." Said section 402 (f) reads as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Specifically, the element found wanting in the memorandum accompanying said order was the profit ordinarily added by manufacturers of merchandise of the same general character, it having been shown by the record that although the subject merchandise was a patented product, to wit, certain flushwood doors, of a peculiar construction as regards ventilation, there were other manufacturers of doors in Canada, the country of exportation.

The only evidence introduced before me, upon this rehearing, relates to this element. Both by affidavit of the sales manager of Canada Flushwood Door, Ltd., the manufacturer and exporter of the instant merchandise, and by stipulation of the parties, it has been established that the profit ordinarily added by other manufacturers of doors in Canada, at or about the date of exportation involved herein, did not exceed that added by said Canada Flushwood Door, Ltd.

Counsel for the Government acceded to said stipulation without, however, waiving the contention that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and as represented by the appraised values, constitutes the proper basis of appraisement to be adopted in this case. It is urged by the defendant that all issues previously

raised in these proceedings remain undetermined, notwithstanding the limited purpose of the order of restoration.

Citing the case of *United States* v. *Elliot, Greene & Co.*, 28 C. C. P. A. (Customs) 177, C. A. D. 141, counsel for plaintiff argue that the memorandum of Judge Mollison accompanying said order, and holding that foreign, export, and United States values have been effectively negated, "not having been appealed from, has become final as far as it goes."

It must be remembered, however, that the case of *United States* v. *Elliot, Greene & Co., supra*, involved an interlocutory judgment of the appellate division, not that of a single judge, and the ruling of the cited case has been expressly limited to deliberations of the former in the case of *Cox & Fahner (Steel Union-Sheet Piling, Inc.) et al.* v. *United States*, 31 C. C. P. A. (Customs) 141, C. A. D. 264, wherein it was stated:

It will be observed that the sole duty of the single judge under section 501, *supra*, is to "determine the value of the merchandise." That is the only decision of the single judge contemplated by the section from which an application for review may be filed. The order of the single judge restoring the cases to the docket for the purpose of enabling appellants to introduce evidence of cost of production was merely an interlocutory order, and the *decision* made therein was that the case should be reopened for the purpose stated.

A decision reopening a reappraisement proceeding for the introduction of further evidence is not subject to review. *United States* v. *International Graphite & Electrode Corp.*, 25 C. C. P. A. (Customs) 74, T. D. 49066.

The case last cited is on all fours with the case at bar, except that there the case was reopened for all purposes, while in the instant case the reopening was only for the purpose of permitting appellants to prove the cost of production of the merchandise.

However, we do not think there is any difference in principle between the two cases. The ground of decision in both cases is in effect the same, viz, that the order complained of was interlocutory in character and not a final decision. In the case at bar we have no doubt that when a final decision is made by the trial judge he may review the entire record and consider all questions raised thereby, and an application for review of all such questions may be taken by either party.

Accordingly, it is my right and duty to re-examine all of the issues raised in this action. In doing so, however, I am mindful of the fact that none of the evidence relating thereto was adduced before me, and that two of my esteemed colleagues, who have heard the relevant testimony have, after careful deliberation, determined the effect thereof.

In a decision reported as *A. N. Deringer, Inc.* v. *United States*, 34 Cust. Ct. 452, Reap. Dec. 8390, Chief Judge Oliver, before whom the case was originally submitted, found from the record as then made:

\* \* \* that the "Unik No. 90" doors in question are patented articles of special construction; that they are manufactured exclusively by the Canadian exporter of the shipment in question; that the Canadian manufacturer and exporter restricts itself in the disposition of the merchandise in the foreign market for home consumption by selling only to wholesalers and lumber dealers at different prices, depending on the status of the purchaser; and that the manufacturer also limits its sales to the United States to selected distributors, who are restricted in their disposition of the merchandise in this country under a requirement to sell, within allotted territories, only to lumber dealers for resale.

For the reason, however, that the Canadian manufacturer's sales manager testified, on cross-examination, that customers of his company were not in any way restricted in their dominion over the purchased merchandise, nor subject to any limitations in their disposition thereof, Chief Judge Oliver was of opinion, on the authority of the cases of *United States* v. *H. W. Robinson & Co., State Forwarding Co., and Edgar S. Bibas*, 19 C. C. P. A. (Customs) 274, T. D. 45436; *Glanson Co.* v. *United States*, 31 Cust. Ct. 473, A. R. D. 33, that resales, if any, by wholesalers, might serve as a basis from which foreign value could be derived. As the record was silent with respect to such sales, the Chief Judge found the proof inadequate to overcome the appraiser's presumptively correct return of values.

Plaintiff thereupon moved for a rehearing for the purpose of showing that, although sales were in fact made by wholesalers and lumber dealers in the country of exportation, they were not of a character to support a finding of foreign value.

Upon the granting of the motion, plaintiff recalled the witness who then testified that the answers previously given by him with respect to unrestricted sales to wholesalers were not entirely correct. In answering as he did, at the original trial, he was thinking only of the retail lumber dealers, and that limitations relating to territory, class of purchaser, and price, in fact, circumscribed all sales by wholesalers. He further stated that while the retail lumber dealers were not subject to any restrictions, "They cannot sell anybody else but consumers or contractors; they cannot sell to the wholesaler; they are paying more money for their doors than the wholesaler is paying for his. They sell only to a class below the wholesaler."

While it might thus appear that the additional testimony of this witness was tailored to overcome the deficiencies in proof which led to the judgment sustaining the appraised values, I do not regard it as proper so to characterize it upon the basis of a cold record. Judge Mollison, before whom this additional evidence was adduced, accepted it as creditable, stating, in his decision of December 7, 1956, *supra*:

The testimony of this witness before me on the rehearing represents some amplification, some explanation, and, in some respects, a change from his prior testimony, which he stated was given in part under a misapprehension. Having

examined the record and observed the witness personally, the court is satisfied that the purpose of counsel in interrogating the witness as to his prior incon-- sistent testimony was solely to elicit the truth and that the testimony given on the latest rehearing should be accepted as representing the evidence given by the witness in the matter. No effort was made on the part of the defendant to offer evidence to contradict or controvert the same.

Predicated upon the record as thus supplemented, and the showing of restrictive practices obtaining with respect to all sales on all levels, whether for home consumption in Canada, for exportation to the United States, or in the trade and commerce of the United States, Judge Mollison held that foreign value, export value, and United States value, as respectively defined in section 402 of the Tariff Act of 1930, as amended, had been effectively negatived, insofar as such merchandise was concerned. And for the further reason that the doors in issue have a patented ventilating feature, unlike any other doors manufactured or sold in Canada, it was held that there was no similar merchandise.

There is little room to doubt that the record as presently constituted, which has once again been carefully reviewed, supports the conclusions heretofore reached in this case, as to the nonexistence of foreign, export, or United States values for the merchandise at bar. It has been established, without any evidence to controvert it, that the manufacturer of the imported doors imposes restrictions upon all sales and offers for sale which reach out and restrain all purchasers, except the retail lumber dealer, in their further distribution of the manufacturer's product. It has also been established that the retail lumber dealer sells only to the ultimate consumer.

With the limitations upon full dominion which have been here shown to be in effect, there is a complete denial of the freedom of offer and open competition which underlie the statutory definitions of the three bases of value set forth respectively in subdivisions (c), (d), and (e) of section 402 of the Tariff Act of 1930. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *United States* v. *H. W. Robinson & Co. et al.*, *supra*; *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115; *United States* v. *Graham & Zenger, Inc.*, 31 C. C. P. A. (Customs) 131, C. A. D. 262; *United States* v. *Heemsoth-Kerner Corp.*, 31 C. C. P. A. (Customs) 75, C. A. D. 252.

On the question of cost of production, there is testimony upon the part of plaintiff, in the person of the same sales manager, whose background in accounting qualifies him to state the facts, which establishes the following costs and expenses for doors of the sizes involved in the instant importation:

| Size of Doors | Cost of Materials and Labor | General Expenses |
|---|---|---|
| 2′ wide or less | $3. 95 | $0. 72 |
| 2′ 4″ wide | 4. 25 | . 77 |
| 2′ 6″ wide | 4. 39 | . 79 |
| 2′ 8″ wide | 4. 49 | . 81 |

It also appears that the only expenses incident to placing the doors in condition packed ready for shipment to the United States, within the contemplation of subdivision (3) of the cost of production provisions, *supra*, is a loading cost of 1 to 2 cents per door.

Just why the witness was not also interrogated directly as to the profit ordinarily added by the manufacturer of the involved doors, despite the many hearings in this case, is nowhere explained. Instead, the element of profit is left to be inferentially ascertained by the deduction of costs and expenses from the manufacturer's sales price. While it is not improper under the circumstances of this case so to arrive at the calculation of this item of cost of production, as is evidenced from the following statement in the headnote to the decision of the Court of Customs and Patent Appeals in the case of *United States* v. *Jovita Perez*, 36 C. C. P. A. (Customs) 114, C. A. D. 407, this method of procedure places an unnecessary and unwarranted burden upon the court:

(1) Where the exporter was the sole manufacturer of goods of the character of the imported merchandise, or where the profits added by other manufacturers of the country of export were not reasonably ascertainable, "the profit ordinarily added" pursuant to subparagraph (4) of section 402 (f) will be the profit *actually* added by the exporter; and where the exporter manufactures the merchandise to sell at a predetermined price antedating the establishment of production (as in the instant case), the difference between such price and the costs determined pursuant to subparagraphs (1), (2), and (3) of section 402 (f) will be considered the profit actually added.

In applying the principle of the cited case to the facts of the present one, a complication arises from the fact that the manufacturer's sales prices were not constant. The evidence indicates that within each width-range, prices varied with the quantity sold and were also different for those purchasers who had storage facilities. Generally speaking, the manufacturer maintained a price differential, in home consumption sales, between carload lots, less than carload lots but more than 10, and quantities of from 1 to 10. In addition, those purchasers having warehouses obtained a 10 per centum discount from the respective quantity brackets. Sales for export to the United States were ordinarily made in carload lots, at prices determined by the width of the doors purchased, less discounts of 10 per centum and 5 per centum.

It has been held, under such circumstances, that the profit ordinarily added is that actually included in the price at which the greatest

quantity of the merchandise is sold. See *United States* v. *International Expediters, Inc., for Winsor & Newton, Inc.*, 40 C. C. P. A. (Customs) 148, C. A. D. 511.

Plaintiff has introduced into evidence invoices reflecting all sales made by the manufacturer during the months of December 1949, and January and February, 1950, as being closest in point of time to the period of exportation of the merchandise at bar. A breakdown of the sales covered thereby, as derived from the court's analysis of the invoices, shows the following:

### For Doors of 2′ Widths or Less

| Canadian Sales | Price | Quantity |
|---|---|---|
| Sales in carload lots | at $5.75 less 10% | 2825 |
| Sales in carload lots | at 5.75 | 7525 |
| Sales of 10 or more | at 6.30 less 10% | 32 |
| Sales of 10 or more | at 6.30 | 207 |
| Sales of 1 to 9 | at 6.05 less 10% | 44 |
| Sales of 1 to 9 | at 6.05 | 865 |
| Sales for export to United States [1] | | |
| Sales for export to U. S. | at 6.20 less 10%, less 5% | 2022 |
| Sales for export to U. S. | at 6.20 less 10% | 265 |

### For Doors of 2′ 4″ in Width

| Canadian Sales | Price | Quantity |
|---|---|---|
| Sales in carload lots | at $6.15 less 10% | 795 |
| Sales in carload lots | at 6.15 | 1293 |
| Sales of 10 or more | at 6.50 less 10% | 20 |
| Sales of 10 or more | at 6.50 | 244 |
| Sales of 1 to 9 | at 6.80 less 10% | 7 |
| Sales of 1 to 9 | at 6.80 | 64 |
| Sales for export to United States [1] | | |
| Sales for export to U. S. | at 6.60 less 10% and 5% | 840 |
| Sales for export to U. S. | at 6.60 less 10% | 160 |

### For Doors of 2′ 6″ in Width

| Canadian Sales | Price | Quantity |
|---|---|---|
| Sales in carload lots | at $6.30 less 10% | 1856 |
| Sales in carload lots | at 6.30 | 5959 |
| Sales of 10 or more | at 6.65 less 10% | 21 |
| Sales of 10 or more | at 6.65 | 704 |
| Sales of 1 to 9 | at 7.00 less 10% | 12 |
| Sales of 1 to 9 | at 7.00 | 124 |
| Sales for export to United States [1] | | |
| Sales for export to U. S. | at 6.80 less 10% and 5% | 2695 |
| Sales for export to U. S. | at 6.80 less 10% | 375 |

See footnote on next page.

For Doors of 2′ 8″ in Width

| Canadian Sales | Price | Quantity |
|---|---|---|
| Sales in carload lots . | at $6.50 less 10% | 1971 |
| Sales in carload lots | at 6.50 | 2756 |
| Sales of 10 or more | at 6.85 less 10% | 32 |
| Sales of 10 or more | at 6.85 | 268 |
| Sales of 1 to 9 | at 7.15 less 10% | 7 |
| Sales of 1 to 9 | at 7.15 | 90 |
| Sales for export to United States [1] | | |
| Sales for export to U. S. | at 7.00 less 10% and 5% | 560 |
| Sales for export to U. S. | at 7.00 less 10% | 35 |

A similar breakdown submitted by counsel for plaintiff shows slightly different totals than the ones found by the court, but in the essential fact that in each width-range the greatest quantities were sold at the carload-lot prices, without discount, there is complete accord. Thus the profit actually added by the manufacturer for the greatest quantities sold by him is the profit to be derived from his sales in carload lots.

It having been conceded by the parties that the profit ordinarily added by manufacturers in Canada of merchandise of the same general character was not higher than that added by the manufacturer of the instant merchandise, the court accepts as proof of the element of profit to be added in the ascertainment of the cost of production of the subject doors the difference between the sum of the cost of materials and labor, usual general expenses and loading, and the price at which the manufacturer sold its doors for home consumption in Canada in carload lots. These figures, as submitted by counsel for plaintiff, which have been verified, are as follows:

| Size of Width of Door | Sum of Material, Labor, General Expenses, and Loading Charge | Profit Ordi- narily Added | Percent- age of Profit | Total Cost of Produc- tion (Can.) |
|---|---|---|---|---|
| 2′ or less | $4. 69 | $1. 06 | 22+ | $5. 75 |
| Over 2′ 2″ through 2′ 4″ | 5. 04 | 1. 11 | 22+ | 6. 15 |
| Over 2′ 4″ through 2′ 6″ | 5. 20 | 1. 10 | 21+ | 6. 30 |
| Over 2′ 6″ | 5. 32 | 1. 18 | 22+ | 6. 50 |

Based upon the foregoing considerations, the court makes the following findings of fact:

(1) That the merchandise involved in this case consists of "Unik" doors No. 90 that fall within different price brackets depending upon the width of the doors.

(2) That said merchandise was appraised on the basis of foreign market value in Canada, as evidenced by the prices at which the

---

[1] It does not appear from this record whether the sales for export to the United States were in Canadian dollars or in American dollars. In view of the conclusion reached, however, this fact is here immaterial.

manufacturer sold the respective widths in quantities of 1 to 9 doors, net packed.

(3) That said merchandise was entered at the invoiced unit values, in Canadian dollars, "Reduced by .90909," [sic] and less 5 percent.

(4) That said doors have a patented feature of over-all ventilation and are not similar to any doors manufactured in Canada.

(5) That at all times pertinent hereto the Canadian manufacturer restricted its sales of the product in question for home consumption to wholesale and retail lumber dealers and sold to them at different prices depending upon the status of the purchaser and the quantity sold.

(6) That at or about the date of exportation the manufacturer likewise restricted its sales for exportation to the United States to selected distributors.

(7) That sales to wholesalers in Canada and distributors in Canada and to distributors in the United States were accompanied by restriction as to territory, class of purchaser, and price of resale.

(8) That the greatest portion of "Unik" doors sold by the manufacturer was in carload lots for home consumption in Canada.

(9) That the profit ordinarily added by manufacturers of merchandise of the same general character in Canada was not more than that added by the manufacturer of the subject doors.

(10) That the cost of materials and labor, the usual general expenses, the cost of loading, and the profit ordinarily added for the different widths of doors imported are as follows:

| Width of door | Cost of Material & Labor | General Expenses | Cost of Loading | Profit |
|---|---|---|---|---|
| 2' or less | $3. 95 | $0. 72 | $0. 02 | $1. 06 |
| Over 2' 2'' through 2' 4'' | 4. 25 | . 77 | . 02 | 1. 11 |
| Over 2' 4'' through 2' 6'' | 4. 39 | . 79 | . 02 | 1. 10 |
| Over 2' 6'' | 4. 49 | . 81 | . 02 | 1. 18 |

(11) That the respective costs of production of the involved doors are as follows:

| Width of Door | Cost of Production (Can. $) |
|---|---|
| 2' or less | $5.75 each |
| Over 2' 2'' through 2' 4'' | 6.15 " |
| Over 2' 4'' through 2' 6'' | 6.30 " |
| Over 2' 6'' | 6.50 " |

The court, therefore, makes the following conclusions of law:

1. That such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of Canada for home consumption or for exportation to the United States, within the contemplation of the foreign or export value provisions of section 402 of the Tariff Act of 1930.

2. That such or similar merchandise was not freely offered for sale to all purchasers in the principal markets of the United States, within the provisions for United States value in said section 402.

3. That cost of production, as defined in subdivision 4 of said section 402 is the proper basis for determining the values of the various doors herein involved.

4. That the cost of production of the subject doors is as stated in finding of fact numbered 11.

Judgment will be entered accordingly.