(A.R.D. 282)

NATIONAL CARLOADING CORPORATION *v.* UNITED STATES

Second Division, Appellate Term

(Dated March 30, 1971)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the appellant.
*L. Patrick Gray, III*, Assistant Attorney General (*Joseph I. Liebman*, trial attorney), for the appellee.

Before FORD and NEWMAN, Judges; WILSON, Senior Judge, not participating

*Memorandum to Accompany Order Denying Motion for Rehearing*

NEWMAN, Judge: Appellant moves for an order setting aside our decision and judgment for a rehearing in *National Carloading Corporation* v. *United States*, 65 Cust. Ct. 830, A.R.D. 280 (1970), wherein we affirmed the decision and judgment below sustaining the appraised values. We adhere to our decision for all of the reasons previously stated, but wish to comment upon certain new matter presented in appellant's affidavit in support of its motion.

The issue in this case concerns "the addition for profit and general expenses usually made, in connection with sales in such market of imported merchandise of the same class or kind as the merchandise undergoing appraisement", which is an allowable deduction from the selling prices in the United States pursuant to section 402(c)(1) of the Tariff Act of 1930, as amended (United States value). In our

593

prior opinion we held that appellant failed to meet its burden of proof under section 402(c)(1).

Appellant established at the trial before Judge Watson that Intercontinental Industries, Inc., Chicago, was the sole importer of *unfinished mica* condensers. But appellant offered no proof as to whether there were other importers of condensers, or even whether there were importers of *finished* mica condensers. The position of appellant's counsel is that the "class or kind" of merchandise involved in this case for purposes of determining the usual addition for profit and general expenses under section 402(c)(1) is the *particular* one involved, viz., *unfinished mica* condensers. Following that line of reasoning, appellant strenuously argues that we must accept solely Intercontinental's markup as representing the addition "usually made" in connection with sales of merchandise of the "same class or kind" as that undergoing appraisement.

We do not think that the construction of the phrase "class or kind" intended by Congress is as narrow as that urged by appellant here. In our previous opinion, we briefly discussed the legislative background of the "class or kind" phrase in section 402(c)(1), and it is unnecessary to repeat that discussion here, except to reiterate that such phrase was obviously intended to have a broader application than the particular imported product. The importation consists merely of a "condenser minus the casing or outside coating" (R. 16); and consequently we see no reason why, for purposes of section 402(c)(1), the "class or kind" in this case should not be considered as condensers. Accordingly, we reject appellant's argument that the "class or kind" of merchandise involved is merely the particular product imported by Intercontinental.

In *A. N. Deringer, Inc.* v. *United States*, 37 Cust. Ct. 591, R.D. 8708 (1956),* one of the issues was whether the phrases "merchandise of the same general character" and "merchandise of the same class or kind" as used in section 402(f)(4) of the Tariff Act of 1930, as amended (cost of production), referred to doors generally or whether those phrases were limited to a particular ventilated door covered by a patent. With reference to this issue, the court commented (37 Cust. Ct. at 595–6):

> As has been stated, the plaintiff herein offered evidence as to the item of profit only with respect to the profit made by the manufacturer and exporter of the doors here involved in the manufacture and sale of doors such as those here involved. * * *
>
> It will be noted that the exact wording of the statute calls for the profit which ordinarily is added in the case of "merchan-

---

* *Dec. on reh.,* 40 Cust. Ct. 810, R.D. 9145 (1958), *aff'd,* 42 Cust. Ct. 711, A.R.D. 102 (1959).

dise of *the same general character*" as that under appraisement, by "manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of *the same class or kind*". Plaintiff relies upon the fact that the doors involved herein are patented articles "and only patentable because of their peculiar character" to exclude from consideration the profits made by other manufacturers of other doors in Canada. The witness testified, on cross-examination, that there were other manufacturers of doors in Canada.

Applied to the situation at bar, the question then is, do the words "merchandise of the same general character" and "merchandise of the same class or kind" refer to doors generally, or, in the case of a patented article, are they limited to the particular patented door?

The writer is of the opinion that the language of the statute calls for evidence, if available, of the profits ordinarily added by other Canadian manufacturers of doors. The words "same general character" and "same class or kind" have a group connotation which would appear to be wider in its application to the subject matter than the relatively narrow interpretation which plaintiff seeks. Certainly, it is broader in scope than the term "similar."

The instant doors are identified as interior doors, presumably for houses. Any interior house door, for example, would be merchandise of the "same general character" or "of the same class or kind" as the particular patented interior house doors here involved. It seems to the writer that had Congress wished to confine the profit to be added under section 402(f) to that made in connection with merchandise *identical* with that under appraisement, it would have done so by appropriate language. Apparently, Congress wished to broaden the base upon which the item of profit was to be found. [Italics quoted.]

The *Deringer* case is relied upon in appellant's affidavit, but we fail to see how it supports appellant's position.

Appellant cites *Stockheimer & Harder et al.* v. *United States*, 49 Cust. Ct. 420, R.D. 10355 (1962), *dec. on reh.*, 55 Cust. Ct. 532, R.D. 11034 (1965), *rev'd*, 58 Cust. Ct. 801, A.R.D. 218 (1967). In 49 Cust. Ct. at 424, the court stated:

Since there were no other manufacturers of fishhooks in France, it follows that there were no "manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind."

Since, in the present case, appellant did *not* show that there were no other importers of condensers, we do not deem the *Stockheimer* holding as helpful to appellant.

As mentioned above, appellant even failed to prove that there were no importers of *finished* mica condensers. In its affidavit, appellant

contends that "as a matter of law" *finished* mica condensers are of a different class or kind than *unfinished* mica *condensers*. Cited in support of that argument is *United States* v. *Henry Maier*, 21 CCPA 41, T.D. 46378 (1933), wherein one of the issues was the amount to be added for "the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind" under section 402(e) of the Tariff Act of 1922. The goods in *Maier* consisted of certain unfinished velvet, or velvet in the gray, and the appellate court held (*id.* 51–52) :

> It is our opinion in the case at bar that, under the facts disclosed by the record, all velvets manufactured and sold in Germany are, at a certain stage of their manufacture, of the same general character as the merchandise here involved, but that no velvets at such stage of manufacture are ordinarily sold by other German manufacturers; all sales are of velvets in their finished state, which velvets are not of the same general character as the merchandise here under consideration. * * *

Appellant now argues that *Maier* constitutes authority for the principle that unfinished articles are not of the same "class or kind" as finished articles for appraisement purposes; and that in the present case it should have been held *as a matter of law* that unfinished mica condensers are not articles "of the same class or kind" as finished mica condensers.

As we read *Maier*, the court simply held that *velvets* in their finished state were not of the same general character as those under consideration. Clearly, the appellate court did not hold that, as a matter of law, finished articles are of a different "class or kind" than unfinished articles. Stated differently, *Maier* does not foreclose our considering each case on its own facts and circumstances as to the "class or kind" of merchandise involved for purposes of section 402(c)(1). We find nothing in the instant record nor in appellant's affidavit which persuades us that the "class or kind" of merchandise here should be narrowed to *unfinished mica* condensers.

Finally, even if the words "class or kind" were interpreted, under the *Maier* holding, to exclude *finished* condensers, no facts or authority have been called to our attention which would also require exclusion of unfinished condensers *made of materials other than mica*. Therefore, the usual profits and general expenses of importers of those unfinished condensers would be relevant to the proper allowance under section 402(c)(1). Appellant did not establish that there were no such importers.

In conclusion, we have carefully considered the decisions cited in appellant's affidavit. However, we remain of the opinion that the markup solely of Intercontinental Industries, Inc., in the case of its particular product cannot be accepted as satisfying the requirements of section 402(c)(1). Consequently, we adhere to our decision and judgment.

Appellant's motion is denied, and an order will be issued accordingly.